**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------**x**

GIRARD STREET INVESTMENT
HOLDINGS LLC,

Case No. 1:24-cv-04448-JSR

        Plaintiff,

v.

PDV HOLDING, INC.,

        Defendant.

---------------------------------------------------------**x**

## DEFENDANT PDV HOLDING, INC.'S
## <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Background ............................................................................................................ 3

Legal Standard and Applicable Law ..................................................................... 6

Argument ............................................................................................................... 8

    I.      Plaintiff Has Failed to Allege Alter Ego Under Delaware Law. ........................... 8

           A.      Plaintiff Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil. .............................................. 8

           B.      Plaintiff Has Not Alleged "Exclusive Domination and Control." ............ 10

           C.      Plaintiff Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest. ............................................. 15

    II.     Federal Common Law Does Not Apply, But Even If It Did, Plaintiff Fails to State a Claim. .................................................................. 20

           A.      *Bancec* Is Inapplicable. ........................................................ 20

           B.      Plaintiff Cannot Establish "Extensive Control" Under *Bancec.* ............... 21

    III.    Count I Fails to State a Claim. ..................................................... 25

Conclusion .......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Aaron Richard Golub, Esquire, P.C. v. Blum*,
No. 23-cv-10102 (JSR), 2023 WL 1376436 (S.D.N.Y. Apr. 1, 2024) ........................................ 7

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
545 A.2d 1171 (Del. 1988) ........................................................................................ 12, 22, 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................................ 6, 7

*Brunswick Corp. v. Waxman*,
599 F.2d 34 (2d Cir. 1979) ....................................................................................................... 18

*Buck v. Viking Holding Mgmt. Co. LLC*,
No. CV N20C-08-249 AML (CCLD), 2021 WL 673459 (Del. Super. Ct. Feb. 22, 2021) ....... 16

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
154 A.2d 684 (Del. 1959) ........................................................................................................... 9

*Cascade Energy & Metals Corp. v. Banks*,
896 F.2d 1557 (10th Cir. 1990) ............................................................................................... 17

*Casper Sleep, Inc. v. Mitcham*,
204 F. Supp. 3d 632 (S.D.N.Y. 2016) ....................................................................................... 6

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012) ..................................................................................................... 25

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
159 F.3d 412 (9th Cir. 1998) ..................................................................................................... 7

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981) ................................................................................................................. 20

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ......................................... 9

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) ..................................................................................................... 8, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018) ......................................................................................... 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019) ..................................................................................................... 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. MC 17-151-LPS, 2024 WL 325133 (D. Del. Jan. 29, 2024) ............................... 6

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
  147 F. App'x 195 (2d Cir. 2005) ....................................................................... 16

*Dexia Credit Local v. Rogan*,
  629 F.3d 612 (7th Cir. 2010) ............................................................................. 7

*Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*,
  749 F. App'x 765 (11th Cir. 2018) ..................................................................... 17

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015) ........................................................................... 22, 24

*EMAK Worldwide, Inc. v. Kurz*,
  50 A.3d 429 (Del. 2012) ................................................................................... 14

*Energy Coal, S.p.A. v. CITGO Petroleum Corp.*,
  836 F.3d 457 (5th Cir. 2016) ............................................................................. 21

*Energy Coal, S.p.A. v. CITGO Petroleum Corp.*,
  No. 2:14CV03092, 2015 WL 5123867 (W.D. La. Aug. 31, 2015) ............................ 21

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983) ................................................................................... passim

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021) .......................................................................... 21, 23, 24

*GemShares, LLC v. Kinney*,
  No. 17 CIV. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017) ........................... 4

*Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*,
  934 F. Supp. 570 (S.D.N.Y. 1996) ..................................................................... 18

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) ................................................................... 11

*In re Sunstates Corp. S'holder Litig., C.A.*,
  No. CIV.A. 13284, 2001 WL 432447 (Del. Ch. Apr. 18, 2001) ............................... 22

*In re The Heritage Org., L.L.C.*,
  413 B.R. 438 (Bankr. N.D. Tex. 2009) ........................................................... 10, 11

*Jab Energy Solutions II, LLC v. Servicio Marina Superior, LLC*,
  640 F. App'x 373 (5th Cir. 2016) ....................................................................... 17

*Joint Venture Acquisition v. Misra*,
No. 87 CIV. 5340 (RWS), 1992 WL 212352 (S.D.N.Y. Aug. 25, 1992) .................................. 7

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
313 F.3d 70 (2d Cir. 2002) ............................................................................................... 7, 20

*Kirschenbaum v. Assa Corp.*,
934 F.3d 191 (2d Cir. 2019) .................................................................................................. 21

*LaCourte v. JP Morgan Chase & Co.*,
No. 12 Civ. 9453(JSR), 2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013) ................................... 9

*Lau v. Specialized Loan Servicing, LLC*,
No. 23 CIV. 1385 (JPC) (GWG), 2024 WL 3219810 (S.D.N.Y. June 28, 2024) ................... 25

*Manichaean Cap., LLC v. Exela Techs., Inc.*,
251 A.3d 694 (Del. Ch. 2021) .................................................................................... passim

*Mason v. Network of Wilmington, Inc.*,
No. Civ. A 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ................................. 10, 13

*Morris v. Am. Pub. Utils. Co.*,
122 A. 696 (Del. Ch. 1923) .................................................................................................... 22

*Nieves v. Insight Bldg. Co., LLC*,
No. CV 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020) ................................... 14

*Northbound Grp., Inc. v. Norvax, Inc.*,
795 F.3d 647 (7th Cir. 2015) ................................................................................................. 17

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
73 F.4th 157 (3d Cir. 2023) ................................................................................................... 10

*Pac. Dev., Inc. v. United States*,
No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979) .............................................................. 12

*Paskar v. City of New York*,
3 F. Supp. 3d 129 (S.D.N.Y. 2014) ......................................................................................... 5

*Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*,
974 F.2d 545 (4th Cir. 1992) ................................................................................................. 17

*Peterson v. Islamic Republic of Iran*,
627 F.3d 1117 (9th Cir. 2010) ............................................................................................... 20

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
721 F.3d 95 (2d Cir. 2013) .................................................................................................... 20

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
No. 2019-0431-JTL, 2024 WL 274246 (Del. Ch. Jan. 25, 2024) ...................................... 11, 14

*Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*,
462 F.3d 666 (6th Cir. 2006) ...................................................................... 17

*Sears, Roebuck & Co. v. Sears plc*,
744 F. Supp. 1297 (D. Del. 1990) ............................................................. 9, 10

*Trust v. Kummerfeld*,
153 F. App'x 761 (2d Cir. 2005) ......................................................................... 7

*TransAmerica Leasing, Inc. v. La Republica de Venezuela*,
200 F.3d 843 (D.C. Cir. 2000) ............................................................... 24

*Trenwick Am. Litig. Tr. v. Billett*,
931 A.2d 438 (Del. 2007) ...................................................................... 12

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
906 A.2d 168 (Del. Ch. 2006) ......................................................... 12, 22, 23

*Trevino v. Merscorp, Inc.*,
583 F. Supp. 2d 521 (D. Del. 2008) ..................................................... 10

*Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*,
549 B.R. 21 (Bankr. S.D.N.Y. 2016) .................................................... 25

*United States v. Jon-T Chems., Inc.*,
768 F.2d 686 (5th Cir. 1985) ............................................................... 16

*Valley Fin., Inc. v. United States*,
629 F.2d 162 (D.C. Cir. 1980) .............................................................. 12

*VFS Fin., Inc. v. Falcon Fifty LLC*,
17 F. Supp. 3d 372 (S.D.N.Y. 2014) ...................................................... 9

*Walker Int'l Holdings, Ltd. v. Republic of Congo*,
415 F.3d 413 (5th Cir. 2005) ................................................................. 20

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*,
752 A.2d 1175 (Del. Ch. 1999) ....................................................... 8, 9, 15

*Winner Acceptance Corp. v. Return on Cap. Corp.*,
No. 3088-VCP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ........................... 11, 15

**Statutes**

28 U.S.C. § 1603(b)(3) ............................................................................... 21

28 U.S.C. § 2201 ................................................................................................. 25

8 Del. C. § 211(b)............................................................................................... 14

**Other Authorities**

1 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corps.,* Ch.2, § 41.85 .... 16, 17

Executive Order 13835 ......................................................................................... 5

Executive Order 13850 ......................................................................................... 5

Executive Order 13884 ......................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 69 ................................................................. 7, 20, 21

**Regulations**

31 C.F.R. § 591.310 .......................................................................................... 5, 19

31 C.F.R. § 591.407 .......................................................................................... 5, 19

**Introduction**

Plaintiff Girard Street Investment Holdings, LLC ("Girard Street") seeks extraordinary relief and has failed to state a claim for it. In 2021, Girard Street acquired a note that was issued by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of the Bolivarian Republic of Venezuela ("Venezuela" or the "Republic"), and guaranteed by PDVSA's affiliate PDVSA Petróleo S.A. ("Petróleo"). After taking no action on the debt for three years, Girard Street filed suit against PDVSA and Petróleo in this Court and obtained a default judgment three months later. Girard Street now seeks to attach the shares of PDVSA's wholly owned American subsidiary, Defendant PDV Holding, Inc. ("PDVH")—a Delaware corporation that was not a party to the underlying action—by claiming that PDVH is PDVSA's alter ego. Instead of the typical alter-ego claim, where the plaintiff seeks to pierce the subsidiary's veil to reach the assets of the parent, Girard Street seeks to reverse-pierce the (foreign) parent's veil to reach the assets of the (American) subsidiary. The suit should be dismissed. The complaint fails to meet the three requirements for reverse veil-piercing under Delaware law, which governs here.

*First*, there are no allegations suggesting "fraud or similar injustice" in the use of corporate form—in particular, none plausibly suggesting that PDVH was created as a sham to deceive or defraud creditors in general or Girard Street in particular. On the contrary, PDVH has existed for nearly three decades and is the indirect owner of CITGO Petroleum Corporation ("CITGO"), a major U.S. refiner. Girard Street does not allege that it was confused about the difference between PDVSA and PDVH or that it was deceived into thinking that PDVH would pay the note. It alleges no impairment beyond the inability to collect from PDVSA, which is not grounds for veil-piercing.

*Second*, the allegations fail to plausibly suggest "exclusive domination and control" by PDVSA over PDVH beyond what is typical—and sometimes obligatory—under Delaware law. Girard Street alleges sporadic instances of overlapping personnel and the payment of dividends from the subsidiary to the parent, but these are legal commonplaces. Girard Street also invokes Venezuelan officials' political statements and purported authority to act with respect to PDVH, but fails to allege a single fact showing that these officials did anything at all, let alone so dominated the day-to-day operations and management of PDVH that the subsidiary simply functioned as a facade for PDVSA. Nor does Girard Street allege that PDVH controlled its parent, that any such control harmed Girard Street, or that PDVH siphoned funds from PDVSA that otherwise would be available to satisfy Girard Street's judgment—crucial factors considered by Delaware courts when faced with a reverse veil-piercing request.

*Third*, Girard Street cannot demonstrate that reverse-piercing would be equitable or serve the public interest. On the contrary, its requested relief would be *in*equitable and *contravene* the public interest. Girard Street, a sophisticated investor, acquired the note from the original noteholder *after PDVSA was already purportedly in default*. It knew that PDVH had not provided a guaranty, pledge of collateral, or other assurance of payment, as did the original noteholder, also a sophisticated purchaser. When it took the note, Girard Street had actual or constructive knowledge of nearly every fact that it now alleges as a basis for disregarding PDVH's separate corporate existence, since these facts occurred before 2021 and were public. It acquired the note years after other creditors began asserting what are now over $21 billion in judgments against PDVSA and the Republic. On top of that, U.S. sanctions law forbids the attachment of PDVH's property without a license from the U.S. government, which is not alleged to have been issued. In other words, Girard Street gambled on distressed foreign

sovereign debt with eyes wide open as to the terms of the contract, the potential claims against PDVSA, the corporate relationship between PDVSA and PDVH, and the certainty that it could not collect from PDVSA. It is perverse for Girard Street now to throw itself before this Court and plead for the assistance of equity.

In addition to correctly invoking Delaware law, the complaint incorrectly proposes the federal common law applicable to foreign entities as an alternative alter ego standard. Besides the fact that PDVH is an American corporation, that law does not apply because Fed. R. Civ. P. 69 directs the application of state law, and New York choice of law principles require application of the law of the state in which PDVH is incorporated. Even if federal common law did apply, the allegations would still fail to demonstrate PDVSA's extensive, "day-to-day" control such that PDVH's separate corporate status was effectively ignored. The complaint should be dismissed.

## Background

In December 2023, Girard Street sued PDVSA and Petróleo on a note (the "Note") based on purported breaches of contract that began in 2017 and ended in 2019. ¶¶ 87–95.[1] *See Girard Street Inv. Holdings LLC v. PDVSA*, No. 1:23-cv-10772-JSR (S.D.N.Y.). Three months later, on March 8, 2024, it obtained a default judgment of over $341.1 million. ¶ 108. The contract giving rise to the Note (the "Note Agreement") was executed on June 29, 2016, between PDVSA (issuer), Petróleo (guarantor), and Servicios Halliburton de Venezuela, S.A. ("Halliburton") (noteholder). ¶ 79. Under a purchase agreement Girard Street did not disclose in the underlying action, Halliburton assigned the Note to Girard Street effective January 14, 2021. ¶ 81.

Plaintiff filed this action on June 10, 2024, seeking to enforce its default judgment by obtaining a declaration that PDVH is PDVSA's alter ego and a turnover order against PDVH's

---

[1] Unless noted, the complaint (Dkt. 1) is cited as "¶ __."

3

property under N.Y. CPLR § 5225(b). PDVH is a Delaware corporation formed in 1997[2] that is currently wholly owned by PDVSA. ¶¶ 7, 32. On August 1, 2024, PDVSA moved to vacate the default judgment that forms the basis of this action (Case No. 23-cv-10772-JSR Dkt. 40), and PDVH moved to stay this case pending resolution of PDVSA's motion to vacate (Dkt. 24).

Taking Girard Street's allegations as true, nearly all of the facts relating to its alter ego claim predate its 2021 purchase of the Note. These include statements and conduct of former Venezuelan president Hugo Chávez, his successor Nicolás Maduro, other Venezuelan officials, and the divided control of PDVSA between the Maduro regime and the government of Venezuela recognized by United States in 2019 (¶¶ 16–25, 56–62); Venezuela and PDVSA's lack of funds in 2016 to pay the Note (¶ 21); PDVH's registration as a foreign agent for PDVSA "since its creation" (¶ 26); dividends paid by PDVH to PDVSA starting in 2004 (¶¶ 33–36); debt and collateral issued in 2014-2015 by PDVH's subsidiary, CITGO Holding, Inc. ("CITGO Holding"), which purportedly sent the funds up the chain to PDVSA and then to Venezuela (¶¶ 37–40); Venezuela's "declared intent to refuse to pay arbitral awards" in 2012 and 2014 (¶ 41); the issuance of promissory notes that are the subject of different litigation initiated by PDVSA and PDVH in 2019 (¶¶ 47–55); and the overlap of the PDVSA and PDVH boards of directors "[f]or decades" (¶ 63), including in the 2000-2019 period (¶¶ 64–76). Girard Street does not allege that any of these items was beyond public knowledge when it purchased the Note.

Girard Street's alter-ego theory also relies in part on a Third Circuit decision affirming a finding of alter ego—for jurisdictional purposes—between the Republic and PDVSA (*not*

---

[2] Exhibit A (PDVH Certificate of Incorporation). *GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017) (articles of incorporation filed with state authority are judicially noticeable on motion to dismiss).

PDVH). ¶ 110. PDVH did not participate in that appeal.[3] No court, under any legal rubric, has held that PDVH is PDVSA's alter ego.

Even if Girard Street were to succeed on its alter-ego theory, federal law prohibits it from executing on PDVH's property—*i.e.*, the shares of CITGO Holding. The shares are "blocked property" under the U.S. sanctions regime against Venezuela. E.O. 13850 (blocking property of PDVSA and its subsidiaries); E.O. 13884 (blocking property of the Venezuelan government and its subsidiaries); *see also* E.O. 13835 (restricting any transfer of equity in entities owned indirectly or directly more than 50% by Venezuela). No turnover order can issue without a specific license from the Treasury Department's Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 591.407 ("enforcement of any … judgment … purporting to transfer" blocked property "is prohibited unless authorized pursuant to a specific license issued by OFAC"); 31 C.F.R. § 591.310 (defining restricted transfers to include those procured under a judgment or execution). Girard Street has not alleged that it sought or has a license.

The complaint also does not mention that Girard Street purchased Halliburton's claim four years after the filing of litigation in the District of Delaware, where creditors of PDVSA and the Republic[4] have pursued post-judgment enforcement proceedings seeking to execute on PDVSA's shares of PDVH.[5] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-

---

[3] *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela* (No. 23-1647) (3d Cir.). *See also Paskar v. City of New York*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014) (government records, other litigation, and substance of papers filed in other litigation are all subject to judicial notice and may be considered in evaluating a motion to dismiss).

[4] Creditors of the Republic have been permitted to attach PDVSA's assets based on a finding of alter ego between them. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018), *aff'd*, 932 F.3d 126 (3d Cir. 2019).

[5] The Court may take judicial notice of "the status … and the substance of papers filed" in *Crystallex*. *Paskar*, 3 F. Supp. 3d at 134.

mc-151 (D. Del.) ("*Crystallex*"). The *Crystallex* court has retained a special master, who is overseeing a public auction of the shares of PDVH itself. Eighteen creditors with over $21 billion in total judgments are participating in the Delaware proceedings.[6] Instead of acting diligently after the assignment, Girard Street waited nearly three years to sue on the Note in New York. ¶ 98. As a result, Girard Street missed the deadline to participate in the *Crystallex* process[7] (though it submitted several filings there advising of its progress toward a judgment against PDVSA).[8] Stymied of the opportunity to pursue *PDVSA's* assets in Delaware by its own dithering, Girard Street now seeks to execute on the assets of PDVH on the eve of PDVH itself potentially being sold. The special master in *Crystallex* is expected to recommend a winning bid in August, with a sale hearing to follow this fall.[9]

**Legal Standard and Applicable Law**

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff, *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016), the court need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause

---

[6] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024).

[7] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (setting deadline to participate as a creditor having "filed a motion for a writ of attachment meaningfully in advance of … January 12, 2024[.]").

[8] *See Crystallex*, Dkt. 1038, Dkt. 1038.1 (Girard Street's notification of receipt of judgment); *see also Crystallex*, Dkt. 760, Dkt. 760.1, Dkt. 760.2 (claim update); *Crystallex*, Dkt. 672, Dkt. 672.1 (claiming to be a "prospective bidder" of an "[a]ttached [j]udgment" against PDVSA).

[9] PDVH has and continues to object to the *Crystallex* process, including the propriety of some of the attachments and the manner in which the shares are being sold.

of action." *See Iqbal*, 556 U.S. at 678.

  This turnover action is a post-judgment enforcement proceeding governed by Federal Rule of Civil Procedure 69(a). *Tr. v. Kummerfeld*, 153 F. App'x 761, 762 (2d Cir. 2005) (applying Rule 69 to New York veil-piercing action "initiated as supplementary special proceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b)"). Rule 69(a)(1) provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." As no federal statute applies to post-judgment turnover or veil-piercing actions, New York law, including its choice-of-law rules, applies. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002) (applying, pursuant to Rule 69, the law of the forum state "to determine what assets are subject to enforcement, and thus available to judgment creditors"); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 622-23 (7th Cir. 2010) (applying forum state's law to determine whether to apply alter ego or veil piercing to reach judgment debtor's assets held by third parties); *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*, 159 F.3d 412, 421 (9th Cir. 1998) (holding that California law governed attempt to add third party "as a judgment debtor on an alter ego theory"); *Joint Venture Acquisition v. Misra*, No. 87 CIV. 5340 (RWS), 1992 WL 212352, at *1 (S.D.N.Y. Aug. 25, 1992) (applying New York choice-of-law rules to determine whether Illinois or New York law applied in Rule 69 proceeding). Under New York law, Plaintiff's request to pierce PDVH's corporate veil is governed by the law of the state in which PDVH is incorporated: Delaware. *Aaron Richard Golub, Esquire, P.C. v. Blum*, No. 23-cv-10102 (JSR), 2023 WL 1376436, at *2 (S.D.N.Y. Apr. 1, 2024) ("Under New York choice-of-law principles, the issue of whether the corporate veil may be pierced is determined under the law of the state of incorporation.").

## Argument

### I.    Plaintiff Has Failed to Allege Alter Ego Under Delaware Law.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999). It requires a court to make two findings: "exclusive domination and control" by one corporate entity over the other and that "the corporate structure cause[d] fraud or similar injustice." *Id*. at 1184. The typical veil-piercing case involves a creditor seeking to reach the assets of a debtor's parent corporation. Plaintiff here seeks the opposite: a "reverse veil-pierce," where the plaintiff tries to disregard the parent's separate existence to attach the subsidiary's assets. In addition to the two requirements above, the reverse-pierce plaintiff must prove a third: that taking the extraordinary step of holding a corporation liable for the debts of its shareholder would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021). Plaintiff has failed to adequately plead these three requirements.

### A.    Plaintiff Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil.

The alter-ego claim fails as a threshold matter because Plaintiff has not alleged facts plausibly showing "fraud or similar injustice" through misuse of the corporate form. The Delaware Supreme Court has held that, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."); *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, No. 2022-0378-LWW, 2023 WL 5688392, at *6 (Del. Ch.

Sept. 5, 2023) ("The fraud or injustice must, however, 'come from an inequitable use of the corporate form itself as a sham[.]'") (collecting cases). Attempts to enforce a judgment through reverse-piercing are no exception: As the Delaware Supreme Court also has held, "[a] creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). "[T]he alleged fraud or inequity must be distinct from the . . . underlying cause of action," as "[t]o hold otherwise would render the fraud or injustice element meaningless, and would sanction bootstrapping." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990). The requirement to establish that "the corporate structure cause[s] fraud or similar injustice" is a high bar. *Wallace*, 752 A.2d at 1184.

Girard Street's allegations of fraud or similar injustice here are conclusory. The complaint simply states: "PDVSA abused the corporate form to perpetrate a wrong or injustice." ¶ 127; *see also id.* ¶ 140(c) (same). Girard Street does not—and cannot—allege facts leading to the conclusion that PDVSA "created [PDVH as] a sham entity designed to defraud investors and creditors," *Crosse*, 836 A.2d at 497, or that PDVH, the longstanding parent of one of the country's largest independent refiners and other companies, "exist[s] for no other purpose than as a vehicle for fraud," *Wallace*, 752 A.2d at 1184. This utter failure is sufficient to dispose of the alter ego claim. *See*, *e.g.*, *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 384 (S.D.N.Y. 2014) (dismissing Delaware alter ego claim for failure to allege fraud or similar injustice); *LaCourte v. JP Morgan Chase & Co.*, No. 12 Civ. 9453(JSR), 2013 WL 4830935, at *6 (S.D.N.Y. Sept. 4, 2013) (same).

The only injustice to which Girard Street points is that it cannot "recover the money" that

it was purportedly owed from PDVSA. ¶ 123. As explained below, that is not really the injustice Plaintiff claims, as there were assets available to satisfy PDVSA's debts—Plaintiff just lost the race to the courthouse to recover against those assets because it sat on its purchased claim for three years. More fundamentally, Delaware law forecloses this argument, as "Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil." *Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (citing *Mason v. Network of Wilmington, Inc.*, No. Civ. A 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)).[10]

Having failed to meet the "fraud or similar injustice" prong of the alter ego test, nothing further is needed to hold that the alter ego claim fails as a matter of bedrock Delaware law.

### B.  Plaintiff Has Not Alleged "Exclusive Domination and Control."

Even if the Complaint had sufficiently alleged fraud, Plaintiff's allegations of "extensive control" by PDVSA[11] over PDVH are conclusory or otherwise insufficient. Delaware law

---

[10] Nor can Plaintiff establish "similar injustice" merely by alleging that PDVSA defaulted on the Note, as "the alleged fraud or inequity must be distinct from the . . . underlying cause of action." *Sears*, 744 F. Supp. at 1305. And Plaintiff's allegations that, almost a decade ago, PDVSA received dividends and issued bonds secured by pledges of PDVH's property, ¶¶ 122, 123, also do not show that PDVH's corporate form was used as a vehicle for fraud. If anything, they show that PDVH helped enhance PDVSA's ability to pay its own debts to lenders like the original noteholders here.

[11] The complaint relies on *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157, 172 (3d Cir. 2023), to suggest that PDVSA and the Republic are alter egos for all purposes and thus that the conduct or statements of the Republic or its officials can be imputed to PDVSA. ¶ 110. Plaintiff must ultimately prove that the Third Circuit's decision is binding on these proceedings or otherwise establishes alter ego between the Republic and PDVSA. PDVH does not agree with Plaintiff's characterization of the Third Circuit's decision and does not concede that it is collaterally estopped from contesting the PDVSA-Republic alter ego issue in this case. If Plaintiff cannot establish that collateral estoppel applies, then the Republic's conduct does not support Plaintiff's allegation of alter ego between PDVSA and PDVH, as Delaware law requires Plaintiff to pierce the veil at each rung of the corporate ladder; broad generalizations of guilt by association among affiliates will not suffice. *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 514

presumes that a wholly owned subsidiary is not the alter ego of its parent company. *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 WL 274246, at *16 (Del. Ch. Jan. 25, 2024) ("[T]here exists a presumption of corporate separateness, even when a parent wholly owns its subsidiary and the entities have identical officers and directors."). Instead, Delaware courts consider the following non-dispositive factors when assessing "extensive control": "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; or (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008); *Manichaean Cap.*, 251 A.3d at 706-07 (considering same factors in reverse veil-piercing context). Plaintiff ticks through most of these factors in the complaint, *e.g.*, ¶¶ 122, 124, 126, 140(b), but its allegations are insufficient to state a plausible claim for control.[12]

      *Undercapitalization, solvency, and siphoning of funds*. Under a traditional veil-piercing analysis, where a subsidiary's creditor attempts to reach the parent's assets, it makes sense to consider whether the parent undercapitalized the subsidiary, rendered it insolvent, or siphoned its funds. But that conduct should be irrelevant in the reverse-piercing context, where it helps rather

---

(Bankr. N.D. Tex. 2009) ("[T]he Delaware [alter ego] test must be applied to, and satisfied at, each level or layer of ownership applicable within the multi-faceted entity structure."); *accord In re HH Liquidation, LLC*, 590 B.R. 211, 273 (Bankr. D. Del. 2018).

[12] The complaint delineates the allegations pertinent under Delaware law (¶¶ 119–136, 140) separately from those under federal common law (¶¶ 112–118, 139). Because Plaintiff is the master of its complaint, PDVH accepts this divide for purposes of addressing why Plaintiff has failed to state a claim under either test. For the avoidance of doubt, PDVH does not concede that the allegations attributed to the federal common law standard support piercing under Delaware law, or vice versa.

than hurts the creditor to enhance the parent's financial standing. *See Pac. Dev., Inc. v. United States*, No. 77-0690, 1979 WL 1283, at *2 (D.D.C. Jan. 3, 1979), *aff'd sub nom. Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980). Girard Street's complaint misses this distinction and collapses these factors together. It alleges that years ago, PDVSA caused PDVH to send too many dividends to PDVSA and that PDVH tied up its assets in pledges to benefit PDVSA, so that now PDVH "does not have the funds to pay dividends." ¶ 125; ¶ 122; *see also* ¶ 126 (associating same conduct with the facade factor discussed below). Even accepting that such allegations *could* support reverse-piercing, Girard Street's allegations misunderstand Delaware law and the relationship between a company and its wholly owned subsidiary. Under Delaware law, PDVH's alleged conduct is not out of the ordinary and does not supply a basis for piercing the corporate veil.

Directors of a wholly owned subsidiary (like PDVH) are obligated by their fiduciary duties to operate the company for the benefit of their shareholder (like PDVSA) and indeed are authorized by law to follow a sole shareholder's instructions. *E.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201–03 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438 (Del. 2007) (explaining that directors of a subsidiary are "entitled to follow the parent's instructions unless those instructions require[] the board to violate the legal rights of others," and have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's strategy would not violate any legal obligation the subsidiary owes to another"). Assuming as true for present purposes the

12

conclusory allegation that PDVSA instructed PDVH to issue dividends and pledge its assets for PDVSA's benefit, PDVH's management acted in conformance with Delaware law by following that instruction. Delaware law does not permit piercing the corporate veil based on conduct that PDVH's management is either entitled or obliged by Delaware law to perform.

Moreover, it is untenable to characterize dividends from a subsidiary to a parent company as a "siphoning" of funds from a debtor. The dividends that Plaintiff complains of took place years ago and, more importantly, only *enhanced* PDVSA's financial standing, meaning that—if anything—they inured to Plaintiff's benefit as a creditor of PDVSA.

*Corporate Formalities*. Plaintiff again recites conclusory buzzwords intended to map onto Delaware law. ¶ 114 (alleging "on information and belief" that "some of the corporate records and/or corporate formalities relating to corporate records are incomplete"); ¶ 124 (same); *see*, *e.g.*, *Mason v. Network of Wilmington, Inc.*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005) (listing whether "corporate records [were] kept" as a consideration in assessing adherence to corporate formalities). The complaint is bereft of actual examples. Girard Street does allege that "PDVSA failed to observe corporate formalities when its President reviewed PDVH's contracts," ¶ 124, but allowing a parent to review the subsidiary's contracts is not a failure to observe "corporate formalities." Even so, the allegation is conclusory. Though the complaint alleges that PDVSA's president had *authority* to review PDVH contracts and that a Venezuelan official had the *authority* to modify PDVH's management and administration, ¶¶ 76, 124, 126, Girard Street fails to cite a single example where either of these powers was actually exercised, let alone to override the business judgment of PDVH's management.

*General Facade*. Girard Street alleges that there was sporadic overlap between the boards of PDVSA and PDVH. ¶¶ 63-76, 126. It is well-settled Delaware law that the overlap of

personnel and directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, No. CV 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (explaining that Delaware law presumes a subsidiary is distinct from its parent and that "[s]imilarities between entities, such as overlap of personnel, do not negate this basic principle: This rule applies even where one corporation wholly owns another and even though the entities have identical officers and directors." (internal quotation marks omitted)); *Principal Growth Strategies*, 2024 WL 274246, at *16 (same). Girard Street's allegation that PDVH's directors were "nonfunctioning" because "they were appointed by PDVSA" (¶ 126) is likewise a conclusory *non sequitur*. Sole shareholders not only have the power to appoint directors but are the only ones authorized to do so. 8 Del. C. § 211(b) (providing that directors are elected by shareholder(s) of company); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("The fundamental governance right possessed by shareholders is the ability to vote for the directors the shareholder wants to oversee the firm."). It does not follow from this authority that the subsidiary's directors are "nonfunctioning" (¶ 126), and Girard Street does not allege any example suggesting that PDVH's directors were absentees who did not perform the ordinary duties of a corporate director.

Girard Street also alleges that PDVH has registered with the Department of Justice under the Foreign Agents Registration Act of 1938 ("FARA") as a foreign agent of PDVSA. ¶ 26. This does not suffice to show that PDVH is a facade either. Apart from the fact that this registration was not a secret—and thus there was no "facade"—the complaint acknowledges that PDVH's advocacy to the U.S. government advances PDVH's *own interests*, including those of its subsidiaries. ¶¶ 26, 31 (alleging PDVH's participation in legal proceedings in which it "is either a party or in which the value of PDVH and its subsidiaries is implicated"); *id.* ¶ 27 (alleging that

PDVH director conversed with U.S. Government about protecting "the assets of PDVH and its subsidiaries" from claims brought by creditors of the Republic); ¶ 29 (same).[13]

Girard Street's remaining allegations of control are, once again, conclusory. *E.g.*, ¶ 121 ("At all relevant times, PDVSA and PDVH operated as one entity."); ¶ 131 ("PDVSA has exercised significant and extensive dominion and control over PDVH."). This will not suffice. Delaware courts are clear that piercing the veil should be rare. *E.g.*, *Wallace*, 752 A.2d at 1183; *Winner Acceptance*, 2008 WL 5352063, at \*5 (piercing the veil occurs in an "exceptional case"). Girard Street's conclusory march through the "extensive control" prong of the alter-ego test demonstrates nothing out of the ordinary for wholly owned Delaware subsidiaries.

### C. Plaintiff Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy. Eight factors inform this inquiry.[14] *Manichaean Cap.,* 251 A.3d at 715. Girard Street's complaint

---

[13] Moreover, it is immaterial to a Delaware law alter ego analysis whether PDVH meets a distinct regulatory definition under FARA. *See* ¶ 29.

[14] These are: "(1) the degree to which allowing a reverse pierce would impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct of the insider that gave rise to the reverse pierce claim, and the degree to which allowing a reverse pierce would establish a precedent troubling to shareholders generally; (2) the degree to which the corporate entity whose disregard is sought has exercised dominion and control over the insider who is subject to the claim by the party seeking a reverse pierce; (3) the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider, or to that person's reasonable reliance upon a lack of separate entity status between the insider and the corporate entity; (4) the degree to which the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law, would be served by allowing a reverse pierce; (5) the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider; (6) the possibility that the person seeking the reverse pierce is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief; (7) the extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach; and (8)

does not adequately allege even a single one of the relevant factors, and the facts it has alleged make clear that reverse-piercing would not be equitable here. The absence of equity is another reason Girard Street's complaint must be dismissed.

*First*, Plaintiff cannot establish "reasonable reliance upon a lack of separate entity status between" PDVSA and PDVH (Factor 3). Girard Street bought the Note with actual or constructive knowledge of the facts that it now alleges to support alter ego but it consciously declined to obtain any guaranty, pledge of collateral, or other protection from PDVH. "[V]eil piercing in the contract context is infrequent [] because the party seeking relief 'is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005) (quoting 1 Fletcher Cyc. Corp. § 41.85).[15] Courts consistently require a party seeking to pierce the corporate veil in a contract case to demonstrate that it was duped about the separate corporate existence of its counterparty's affiliates *at the time of contracting*; otherwise, there is no equitable basis to pursue a corporate affiliate from which it could have negotiated a guaranty (or sought other protection) at the time of contracting. *E.g.*, *United States v. Jon-T Chems., Inc.*, 768 F.2d 686,

---

the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt." *Manichaean*, 251 A.3d at 715 (cleaned up).

[15] Delaware courts have enunciated a similar theory in tortious interference cases applying the affiliate privilege, which presumptively protects corporate parent companies from tortious interference claims arising from actions taken (purportedly at the direction of the parent) by their subsidiaries. In explaining that the affiliate privilege is designed in part to prevent "faulty approaches to corporate veil piercing," Delaware courts conclude that "[a] party who wishes to have a parent entity or other controller backstop the obligations of the controlled entity can do so by contract, either by making the parent a party to the agreement or by obtaining a guarantee. A party should not be able to … reap the benefits of protections that it did not obtain at the bargaining table." *Buck v. Viking Holding Mgmt. Co. LLC*, No. CV N20C-08-249 AML (CCLD), 2021 WL 673459, at *6 n.60 (Del. Super. Ct. Feb. 22, 2021) (LeGrow, J.) (internal quotation marks omitted) (collecting cases).

693 (5th Cir. 1985) ("If the creditor wants to be able to hold the parent liable for the subsidiary's debts, it can contract for this.").[16] Here the relevant contract is the assignment from Halliburton to Girard Street in 2021. ¶ 81. Girard Street knew that the Note Agreement lacked a guaranty from PDVH and acquired the Note with knowledge of all the facts up to that date. The fact that executing directly against PDVSA or Petróleo may have been difficult does not demonstrate that Girard Street relied upon the alleged lack of separateness between PDVSA and PDVH.

Furthermore, Girard Street did not inherit Halliburton's knowledge as though it were frozen in 2016, free to ignore anything that happened from 2016 to 2021.[17] On the contrary, investors like Girard Street acquire distressed debt at a substantial discount to face value precisely because they anticipate the difficulty of collection. But even if, contrary to common sense, Girard Street's knowledge were judged as of the time Halliburton obtained the Note five years earlier, most of Plaintiff's alter-ego allegations predate the June 2016 Note Agreement as well.[18] If Girard Street is deemed the successor to Halliburton's knowledge, then it is also the

---

[16] *Accord Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*, 749 F. App'x 765, 770 (11th Cir. 2018) (per curiam) (applying federal common law); *Jab Energy Solutions II, LLC v. Servicio Marina Superior, LLC*, 640 F. App'x 373, 379 (5th Cir. 2016) (per curiam); *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015) (Illinois law); *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 679 n.16 (6th Cir. 2006) (citing Fletcher treatise; applying state law); *Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 550 (4th Cir. 1992) (citing Fletcher treatise); *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990) (Utah law).

[17] *See* ¶ 44 (2019 notes issued by CITGO Holding—which is *not* an alleged alter ego in this case); ¶ 45 (2019 press about CITGO dividends and statements by member of PDVH board); ¶¶ 47 & 50–54 (Fall 2016 pledges of PDVH assets); ¶ 55 (2019 statement by Venezuelan official regarding 2016 pledges of PDVH assets); ¶ 60 (December 2017 resolution by Venezuelan government regarding relationship with PDVSA and subsidiaries); ¶ 61 (April 2018 decree by President Maduro regarding relationship with PDVSA and subsidiaries).

[18] ¶ 26 (alleging PDVH registered as a foreign agent for PDVSA "since its creation"); ¶ 33 (alleging that President Chavez (who died in 2013) "ordered Citgo to pay" dividends to PDVSA, presumably through PDVH); ¶ 34 (2005 political speech); ¶ 35 (2006 Chavez actions); ¶ 36 (2013 press reports about CITGO dividends); ¶ 37 (2014 press coverage of CITGO financing);

successor to Halliburton's knowing failure to obtain a guaranty or collateral pledge from PDVH.[19] *Hyosung Am., Inc. v. Sumagh Textile Co., Ltd*., 934 F. Supp. 570, 576 (S.D.N.Y. 1996) ("[T]he knowledge of an assignor must be attributed to its assignee."). The complaint alleges that Halliburton knew at the time of contracting that PDVSA lacked assets and faced crushing liabilities. ¶¶ 18, 21, 49. The Second Circuit has instructed that piercing the corporate veil to reach an affiliate is not appropriate where a party knowingly contracts with a financially distressed counterparty but does not extract a guaranty from the later-alleged alter ego at the time of contracting. *See Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979). This complements the broader point that it is far from inequitable to hold a sophisticated party to the terms of its agreement when it was on notice at the time of contracting of the facts that it later alleges as a basis to pierce the corporate veil between its counterparty and an affiliate.

*Second*, and relatedly, Plaintiff does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). On the contrary, the allegations indicate that PDVH acted consistently with its fiduciary obligations and its authority to follow the instructions of its sole shareholder. Plaintiff makes no allegation—nor could one conceivably be made—that PDVH's nonexistent control over PDVSA or nonexistent wrongful conduct caused Plaintiff's injury (*i.e.*, PDVSA's failure to pay on the Note) (Factor 3). Indeed, Girard Street alleges that eight years ago, PDVSA left PDVH undercapitalized by causing it to pay dividends and to make pledges to support PDVSA's own borrowing. *See* ¶¶ 122, 123. But if

---

¶¶ 38–40 (2015 CITGO Holding debt issuance); ¶ 41 (2012 and 2014 Venezuelan officials' speeches); ¶ 56 (alleging Venezuela considered PDVH an instrument of the Venezuelan people for *decades*); ¶ 57 (citing PDVSA's articles of incorporation—PDVSA was incorporated in 1976); ¶ 58 (citing 2002 and 2007 Venezuelan court decisions regarding PDVSA); ¶¶ 63–76 (citing "decades" of overlap between corporate boards dating *before* 2016).

[19] Indeed, the Note Agreement itself *does* provide for a guarantor: Petróleo. This shows that Halliburton could and did know how to bargain for a guaranty from one of PDVSA's affiliates.

anything, this only *enhanced* PDVSA's (*i.e.*, Plaintiff's debtor's) ability to pay.

> *Third*, piercing PDVH's veil threatens PDVH's innocent shareholders and third-party creditors (Factors 1, 6, 7). *Manichaean*, 251 A.3d at 716 (assessing potential harm to "innocent shareholders or creditors" of the subsidiary). Girard Street alleges that piercing would "not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim." ¶ 128. This is misleading. The shares of PDVH are currently subject to the *Crystallex* process. If PDVH is sold to a new owner, and Girard Street is subsequently permitted in *this* proceeding to seize PDVH's major asset, then Plaintiff will have interfered with the disposition of PDVH's assets and undermined the "legitimate expectations" of PDVH's (potential and foreseeable) new shareholders.

> *Fourth*, Girard Street is wrong that piercing PDVH's veil "would not establish a precedent troubling to shareholders generally" (¶ 129) or disserve the "public convenience" (¶ 133) (Factors 1 & 4).[20] As explained above, Plaintiff seeks to pierce PDVH's veil based on conduct that under Delaware jurisprudence does *not* warrant disregard of the corporate form. A decision in Plaintiff's favor would thus contravene Delaware public policy and dilute Delaware law's stringent protection of corporate separateness. Moreover, Girard Street's requested relief is currently prohibited under U.S. sanctions law (Factor 4) absent a license from OFAC, which it has not alleged to have sought or obtained. 31 C.F.R. § 591.407; 31 C.F.R. § 591.310.

> *Finally*, Plaintiff did have another remedy available to it (Factor 8): pursuing its claims

---

[20] Girard Street alleges that piercing PDVH's veil would advance "New York's recognized interest as a national and international center of finance and commerce." ¶ 133. This is immaterial since the relevant public policy is that of Delaware (Factor 4). Delaware is by far the most important jurisdiction for matters touching on corporate law, particularly (as should go without saying) for Delaware corporations. But to the extent that New York courts attempt to dilute Delaware's alter-ego rules, doing so would discourage Delaware corporations from transacting business in New York, contrary to New York's interest.

against PDVSA diligently and seeking to attach the shares of PDVH through, or parallel to, the *Crystallex* process.

## II.    Federal Common Law Does Not Apply, But Even If It Did, Plaintiff Fails to State a Claim.

The complaint alleges (¶¶ 112–118, 139) that veil-piercing may be adjudicated under federal common law standards, in particular those enunciated in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). This is incorrect. Rule 69 requires (through New York's choice-of-law rules) that Delaware veil-piercing law apply. But the complaint does not adequately state an alter-ego claim even under *Bancec*.

### A.    *Bancec* Is Inapplicable.

Second Circuit precedent forecloses the application of *Bancec* in favor of state law in this judgment enforcement proceeding. *See Karaha Bodas Co.*, 313 F.3d at 83 (applying, pursuant to Rule 69, the law of the forum state "to determine what assets are subject to enforcement, and thus available to judgment creditors" in an enforcement action against a foreign state); *accord Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005) (explaining that state law applies to "the underlying garnishment proceeding" against a foreign state); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) ("California law on the enforcement of judgments applies to this suit insofar as it does not conflict with the [Foreign Sovereign Immunities Act ("FSIA")].") (quoting Fed. R. Civ. P. 69(a)).

Rule 69's dictate to apply state law has the force of statute, *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 108 n.14 (2d Cir. 2013), and federal common law (like the *Bancec* test) can only apply in the absence of a statute, *see City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981). *Bancec* involved the attribution of liability between a foreign state and its foreign instrumentality, and the Supreme Court held that principles of

federal common law and international law applied. 462 U.S. at 623. Unlike *Bancec*, this case concerns an attempt to pierce the veil of a domestic corporation, a question ordinarily governed by state law given the states' "compelling policy interest" in ensuring that the separate existence of corporations organized under their protection. *Energy Coal, S.p.A. v. CITGO Petroleum Corp.*, No. 2:14CV03092, 2015 WL 5123867, at *3 (W.D. La. Aug. 31, 2015), *aff'd*, 836 F.3d 457, 463 (5th Cir. 2016) (holding that Delaware law applied to attempt to hold CITGO liable as the alter ego of Petróleo, a Venezuelan state entity).[21] *Bancec*'s repeated references to an "instrumentality" excludes American corporations by definition.[22]

### B.  Plaintiff Cannot Establish "Extensive Control" Under *Bancec*.

Even under *Bancec*, Plaintiff has failed to state an alter-ego claim. In the Second Circuit, the "touchstone inquiry" of *Bancec*'s "extensive control" prong is "whether the sovereign state exercises significant and repeated control over the instrumentality's day-to-day operations." *Gater Assets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021). "Assist[ing]" the sovereign in carrying out its "policies and goals" is insufficient. *Id.* "An exercise of power incidental to ownership is not synonymous with control over the instrumentality's day-to-day operations." *Id.* at 56 (quotation marks omitted). Factors relevant to assessing the "control" prong include:

> whether the sovereign nation: (1) uses the instrumentality's property as its own; (2) ignores the instrumentality's separate status or ordinary corporate formalities; (3) deprives the instrumentality of the independence from close political control that is generally enjoyed by government agencies; (4) requires the instrumentality

---

[21] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019), is not to the contrary. That case concerned "the upstream question of whether" the court had jurisdiction under the FSIA, a question to which federal law applies. *Id.* at 196 n.5. Here, the question is the merits question of whether Plaintiff can enforce its judgment against PDVH and its property. Under Rule 69, that question is governed by Delaware law.

[22] The FSIA defines an "agency or instrumentality of a foreign state" as an entity "which is neither a citizen of a State of the United States … nor created under the laws of any third country." 28 U.S.C. § 1603(b)(3).

to obtain approvals for ordinary business decisions from a political actor; and (5) issues policies or directives that cause the instrumentality to act directly on behalf of the sovereign state.

*Id.* at 55 n.5 (quoting *EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 91 (2d Cir. 2015)) (the "*EML* factors").[23]

None of Plaintiff's *Bancec* allegations reflect "day-to-day" control. Many are premised on actions that PDVH is entitled to take as a Delaware corporation or that evince the ordinary "power incidental to ownership" that PDVSA enjoys as a corporate parent under Delaware law:

- PDVH's issuance of occasional dividends to PDVSA (¶¶ 112, 115, 117) is typical subsidiary conduct and not evidence of "repeated control over the [PDVH's] day-to-day operations." Pledges of PDVH's assets for PDVSA's benefit (¶¶ 112, 115–117) eight years ago do not evince repeated, "day-to-day" control.[24] Even if PDVSA directed issuance of dividends or the pledges (and even if they inured to PDVSA's benefit), PDVH's board was authorized under Delaware law to follow those instructions, consistent with its fiduciary duty as a wholly-owned subsidiary to take actions to benefit its parent.[25] *Anadarko*, 545 A.2d at 1174; *Trenwick*, 906 A.2d at 201-03. By the same token, PDVSA may issue such instructions as a "power incidental to ownership" of a Delaware corporation.[26]

- The theoretical authority of Venezuelan officials to review PDVH

---

[23] PDVH reads ¶¶ 113–115 and 117 to correspond to *EML* factors 1, 2, 4, and 5, respectively.

[24] To the extent Paragraph 113 (*EML* factor 3) of the Complaint's obscure reference to "PDVSA's use of PDVH's property as its own" refers to the one-time pledge of 50.1% of PDVH's shares of CITGO Holding as collateral for a purported PDVSA bond, a single instance is far from evidence of the type of "repeated control over" day-to-day operations required by the Second Circuit's jurisprudence. To the extent that paragraph intends to refer to dividends received by PDVSA as property of *PDVH*, that is incorrect; as a matter of Delaware law, a declared dividend is the property of the shareholder (PDVSA), not the subsidiary. *See In re Sunstates Corp. S'holder Litig., C.A.*, No. CIV.A. 13284, 2001 WL 432447, at *3 (Del. Ch. Apr. 18, 2001) ([T]he right to receive payment of a lawfully declared dividend is a separate property right of the record stockholders[.]"); *Morris v. Am. Pub. Utils. Co.*, 122 A. 696, 704 (Del. Ch. 1923).

[25] Plaintiff tries to tie the pledge of 50.1% of PDVH's assets to individuals who purportedly served on the boards of both PDVSA and PDVH. ¶ 116. But Delaware law permits concurrent board service and entitles PDVH to follow PDVSA's instructions.

[26] Accordingly, *EML* factor 5 would render actions PDVH is authorized to take under Delaware law somehow improper evidence of alter-ego. The Court should not sanction such a perversion of PDVH's fiduciary obligations and rights under Delaware law.

transactions/contracts or to "interfere" with PDVH management (¶¶ 112, 115; *EML* factor 4) is not evidence of "significant and repeated control over [PDVH's] day-to-day operations"—especially where Plaintiff has identified zero instances of that purported power being used.

- Sporadic overlap among members of the boards of a company (¶¶ 112, 115, 116) and its wholly owned subsidiary is permissible under Delaware law. *See* Part I.B, *supra*.

- Public, political statements by "Venezuelan and PDVSA authorities" (¶¶ 112, 115, 117) are not evidence of actual "control over [PDVH's] day-to-day operations."

- The purported use of PDVH assets to support the "political and social uses of PDVSA and the Republic" (¶ 113) is expressly excepted from the Second Circuit's *Bancec* rubric. *Gater*, 2 F.4th at 55 (assisting with parent's "policies and goals" insufficient for veil-piercing).

- Plaintiff nowhere alleges that PDVH's registration under FARA (¶ 117; *EML* factor 5) is atypical of a U.S. subsidiary of a sovereign instrumentality or that it suggests day-to-day control. Nor is the definition of a "foreign agent" under FARA coextensive with the *Bancec* inquiry.[27]

In short: allegations that PDVH occasionally acted for PDVSA's benefit do not by themselves permit an inference of day-to-day control.[28] They are consistent with PDVH's fiduciary duties under Delaware law to operate for the benefit of its shareholder. *Anadarko*, 545 A.2d at 1174. Delaware law permits PDVSA to direct PDVH, and permits PDVH and its directors to follow those directions. *Trenwick*, 906 A.2d at 201–03. Piercing PDVH's corporate veil for actions taken in compliance with the law of its state of incorporation would turn *Bancec* on its head.

Plaintiff has fallen well short of alleging the type of extraordinary, day-to-day control

---

[27] Adherence to corporate formalities is the second *EML* factor, just as it is a factor under Delaware law. As discussed in Part II.B, *supra*, Plaintiff alleges nothing other than the fact-free conclusion that "some of the corporate records and/or corporate formalities relating to corporate records are incomplete." ¶ 114.

[28] Plaintiff does not appear to invoke the third *EML* factor (such direct control that it deprives the government agency of its independence). This is no surprise since that factor is directed to the relationship between a sovereign and one of its government agencies, not a separately incorporated U.S. commercial entity like PDVH.

exceeding that in the normal parent-subsidiary relationship. *See Gater*, 2 F.4th at 55–56 ("To qualify as sufficiently extensive under *Bancec*, the sovereign's control over an entity must rise above the level that corporations would normally tolerate from significant shareholders or expect from government regulators."); *EM Ltd.*, 800 F.3d at 94 (central bank was not Argentina's alter ego merely because it helped respond to "extremely severe debt crisis"); *TransAmerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000) (requiring control to "significantly exceed[] the normal supervisory control exercised by any corporate parent over its subsidiary"). Plaintiff alleges nothing more than a foreign instrumentality that owns and controls its subsidiary, which are "features inherent in a state-owned corporation." *TransAmerica Leasing*, 200 F.3d at 853.

Finally, Girard Street alleges that PDVH is party to litigation in this District seeking to invalidate certain bonds issued by PDVSA,[29] and that allowing PDVH to be treated as a separate entity here would "entitle *PDVSA* … to benefits in United States courts while avoiding its obligations." ¶ 118 (emphasis added). Plaintiff misunderstands. In that case, PDVH and PDVSA are separate parties, litigating over a common purported contract that treated them separately: PDVSA was the obligor and PDVH a pledgor to secure PDVSA's obligations, a contractual posture that Girard Street and its predecessor Halliburton notably failed to bargain for here. That both entities sit in different roles in that suit and have different (if aligned) interests, represented by separate, independent counsel, only supports *respecting* the corporate veil between them, not disregarding it. There is nothing inherently improper in this. The law does not infer alter ego simply because two corporate affiliates stand on the same side of the "v" in a single lawsuit.

---

[29] Girard Street does not say so, but this presumably refers to *Petróleos de Venezuela, S.A. v. MUFG Union Bank, N.A.*, Case No. 1:19-cv-10023-KPF (S.D.N.Y.) (filed Oct. 29, 2019).

### III.    Count I Fails to State a Claim.

Count I seeks a declaration under 28 U.S.C. § 2201 (the Declaratory Judgment Act) that PDVH is the alter ego of PDVSA. But "[i]t is well settled that declaratory and injunctive relief are remedies—not independent causes of actions." *Lau v. Specialized Loan Servicing, LLC*, No. 23 CIV. 1385 (JPC) (GWG), 2024 WL 3219810, at *11 (S.D.N.Y. June 28, 2024) (citing *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012) ("The DJA is 'procedural only,' and 'does not create an independent cause of action.'") (citations omitted). In addition, alter ego is a remedy, not a predicate of liability. *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 50 (Bankr. S.D.N.Y. 2016) (applying Delaware law) ("[T]he concepts of alter ego and veil piercing are largely remedial and derivative of the liability of another entity—they do not serve as independent causes of action."). Apart from the substantive defects of Girard Street's alter ego theory, Count I should be dismissed as technically deficient.

### Conclusion

Girard Street is not some doe-eyed innocent who was bamboozled by irregularities of corporate form. It is a sophisticated debt vulture that seeks to make up for delaying its efforts to pursue PDVSA by asking this Court to be the first to ever pierce PDVH's corporate veil. It pretends to have inherited rather than gambled on a promissory note that it took with knowledge of more than two decades' worth of public-record facts, and it relies on those same facts to tap PDVH as an emergency reserve fund to cover its failure to demand a domestic guarantor of PDVSA's debt. Far from promoting justice and upholding public policy, rewriting the Note by permitting an alter ego claim here would disserve both of those values. PDVH respectfully requests that the complaint be dismissed.

Dated: August 1, 2024                    Respectfully submitted,

                                         By: /s/ *Nathan P. Eimer* _____

                                         Nathan P. Eimer (#1976067)
                                         neimer@eimerstahl.com
                                         Scott C. Solberg (*pro hac vice forthcoming*)
                                         ssolberg@eimerstahl.com
                                         Daniel D. Birk (*pro hac vice pending*)
                                         dbirk@eimerstahl.com
                                         Gregory M. Schweizer (*pro hac vice pending*)
                                         gschweizer@eimerstahl.com
                                         EIMER STAHL LLP
                                         224 South Michigan Avenue, Suite 1100
                                         Chicago, IL 60604
                                         Telephone: (312) 660-7600
                                         Fax: (312) 692-1718

                                         *Counsel for Defendant*
                                         *PDV Holding, Inc.*