**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GIRARD STREET INVESTMENT HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PETRÓLEOS DE VENEZUELA, S.A. and PDVSA PETRÓLEO S.A.,<br><br>Defendants. | Case No. 1:23-cv-10772-JSR<br><br>(Consolidated for pretrial purposes with Case No. 1:23-cv-10766-JSR) |
| GIRARD STREET INVESTMENT HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>PDV HOLDING, INC.,<br><br>Defendant. | Case No. 1:24-cv-04448-JSR<br><br>(Consolidated for pretrial purposes with Case No. 1:23-cv-10766-JSR) |

**DEFENDANT PDV HOLDING, INC.'S**
**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Background ............................................................................................................ 3

Legal Standard and Applicable Law ..................................................................... 6

Argument .............................................................................................................. 7

    I.    Plaintiff Has Failed to Allege Alter Ego Under Delaware Law. ............................ 7

        A.    Plaintiff Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil. ............................................................. 8

        B.    Plaintiff Has Not Alleged "Exclusive Domination and Control." ............ 12

        C.    Plaintiff Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest. .............................................................. 18

    II.    Federal Common Law Does Not Apply, But Even If It Did, Plaintiff Fails to State a Claim. ....................................................................................................... 22

        A.    *Bancec* Is Inapplicable. ............................................................................ 22

        B.    Plaintiff Cannot Establish "Extensive Control" Under *Bancec.* ............... 24

Conclusion ............................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**

*Aaron Richard Golub, Esquire, P.C. v. Blum*,
No. 23-cv-10102 (JSR), 2023 WL 1376436 (S.D.N.Y. Apr. 1, 2024) ........................ 7

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
545 A.2d 1171 (Del. 1988) ..................................................................................... 15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................. 6, 11

*Att'y Gen. of U.S. v. Irish N. Aid Comm.*,
668 F.2d 159 (2d Cir. 1982) ................................................................................... 17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................ 11

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*,
722 F.3d 488 (2d Cir. 2013) ................................................................................... 24

*Brunswick Corp. v. Waxman*,
599 F.2d 34 (2d Cir. 1979) ..................................................................................... 20

*Buck v. Viking Holding Mgmt. Co. LLC*,
No. CV N20C-08-249 AML (CCLD), 2021 WL 673459 (Del. Super. Ct. Feb. 22, 2021)....... 19

*Buechner v. Farbenfabriken Bayer Aktiengesellschaft*,
154 A.2d 684 (Del. 1959) ......................................................................................... 8

*Cascade Energy & Metals Corp. v. Banks*,
896 F.2d 1557 (10th Cir. 1990) .............................................................................. 19

*Casper Sleep, Inc. v. Mitcham*,
204 F. Supp. 3d 632 (S.D.N.Y. 2016) ...................................................................... 6

*Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures Corp.*,
159 F.3d 412 (9th Cir. 1998).................................................................................... 7

*City of Milwaukee v. Illinois & Michigan*,
451 U.S. 304 (1981)................................................................................................ 23

*Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*,
No. 2022-0378-LWW, 2023 WL 5688392 (Del. Ch. Sept. 5, 2023) ................. 11, 12

*Crosse v. BCBSD, Inc.*,
836 A.2d 492 (Del. 2003) ...................................................................................... 8, 9

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. MC 17-151-LPS, 2024 WL 325133 (D. Del. Jan. 29, 2024) ............................... 6

*Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*,
  879 F.3d 79 (3d Cir. 2018) ................................................................................... 12

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
  147 F. App'x 195 (2d Cir. 2005) .......................................................................... 19

*Dexia Credit Local v. Rogan*,
  629 F.3d 612 (7th Cir. 2010) ................................................................................. 7

*Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petroleum*,
  749 F. App'x 765 (11th Cir. 2018) ....................................................................... 19

*EM Ltd. v. Banco Cent. De La Republica Argentina*,
  800 F.3d 78 (2d Cir. 2015) ................................................................................... 25

*EMAK Worldwide, Inc. v. Kurz*,
  50 A.3d 429 (Del. 2012) ...................................................................................... 17

*Energy Coal, S.p.A. v. CITGO Petroleum Corp.*,
  836 F.3d 457 (5th Cir. 2016) ............................................................................... 23

*Energy Coal, S.p.A. v. CITGO Petroleum Corp.*,
  No. 2:14CV03092, 2015 WL 5123867 (W.D. La. Aug. 31, 2015) ......................... 23

*Fantazia Int'l Corp. v. CPL Furs N.Y., Inc.*,
  889 N.Y.S.2d 28 (N.Y. App. Div. 2009)............................................................... 13

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)....................................................................................... passim

*Fletcher v. Atex, Inc.*,
  68 F.3d 1451 (2d Cir. 1995) ................................................................................. 14

*Gater Assets Ltd. v. AO Moldovagaz*,
  2 F.4th 42 (2d Cir. 2021)................................................................................. 24, 25

*GemShares, LLC v. Kinney*,
  No. 17 CIV. 844 (CM), 2017 WL 2559232 (S.D.N.Y. June 2, 2017) ........................ 4

*Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*,
  934 F. Supp. 570 (S.D.N.Y. 1996) ....................................................................... 20

*In re Autobacs Strauss, Inc.*,
  473 B.R. 525 (Bankr. D. Del. 2012) ..................................................................... 15

*In re BH S & B Holdings LLC,*
    420 B.R. 112 (Bankr. S.D.N.Y. 2009) ..................................................... 14

*In re Sunstates Corp. S'holder Litig., C.A.,*
    No. CIV.A. 13284, 2001 WL 432447 (Del. Ch. Apr. 18, 2001) ............................... 25

*In re Teleglobe Commc'ns Corp.,*
    493 F.3d 345 (3d Cir. 2007) ............................................................. 14

*In re The Heritage Org., L.L.C.,*
    413 B.R. 438 (Bankr. N.D. Tex. 2009) .................................................... 15

*In re Tropicana Ent., LLC,*
    520 B.R. 455 (Bankr. D. Del. 2014) ...................................................... 14

*Jab Energy Solutions II, LLC v. Servicio Marina Superior, LLC,*
    640 F. App'x 373 (5th Cir. 2016) ........................................................ 19

*Joint Venture Acquisition v. Misra,*
    No. 87 CIV. 5340 (RWS), 1992 WL 212352 (S.D.N.Y. Aug. 25, 1992) ........................ 7

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,*
    313 F.3d 70 (2d Cir. 2002) ............................................................ 7, 22

*Kirschenbaum v. Assa Corp.,*
    934 F.3d 191 (2d Cir. 2019) ............................................................. 23

*LaCourte v. JP Morgan Chase & Co.,*
    No. 12 Civ. 9453(JSR), 2013 WL 4830935 (S.D.N.Y. Sept. 4, 2013) ........................ 12

*Manichaean Cap., LLC v. Exela Techs., Inc.,*
    251 A.3d 694 (Del. Ch. 2021) ....................................................... passim

*Mason v. Network of Wilmington, Inc.,*
    No. Civ. A 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ........................... 9

*Mirage Ent., Inc. v. FEG Entretenimientos S.A.,*
    326 F. Supp. 3d 26 (S.D.N.Y. 2018) ..................................................... 24

*Morris v. Am. Pub. Utils. Co.,*
    122 A. 696 (Del. Ch. 1923) ............................................................. 25

*Nieves v. Insight Bldg. Co., LLC,*
    No. CV 2019-0464-SG, 2020 WL 4463425 (Del. Ch. Aug. 4, 2020) .......................... 16

*Northbound Grp., Inc. v. Norvax, Inc.,*
    795 F.3d 647 (7th Cir. 2015) ........................................................... 19

*OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*,
    73 F.4th 157 (3d Cir. 2023) .................................................................................. 5, 12

*Pac. Dev., Inc. v. United States*,
    No. 77-0690, 1979 WL 1283 (D.D.C. Jan. 3, 1979) ................................................. 16

*Paskar v. City of New York*,
    3 F. Supp. 3d 129 (S.D.N.Y. 2014) ............................................................................ 5

*Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*,
    974 F.2d 545 (4th Cir. 1992) ..................................................................................... 19

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) ................................................................................... 22

*Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*,
    721 F.3d 95 (2d Cir. 2013) ........................................................................................ 23

*Principal Growth Strategies, LLC v. AGH Parent LLC*,
    No. 2019-0431-JTL, 2024 WL 274246 (Del. Ch. Jan. 25, 2024) ............................. 16

*Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*,
    462 F.3d 666 (6th Cir. 2006) ..................................................................................... 19

*Sprint Nextel Corp. v. iPCS, Inc.*,
    No. 3746–VCP, 2008 WL 2737409 (Del. Ch. July 14, 2008) ................................... 13

*Trenwick Am. Litig. Tr. v. Billett*,
    931 A.2d 438 (Del. 2007) ........................................................................................... 15

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) .................................................................................... 15

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ........................................................................... 9

*Trust v. Kummerfeld*,
    153 F. App'x 761 (2d Cir. 2005) ................................................................................. 6

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ..................................................................................................... 10

*United States v. Jon-T Chems., Inc.*,
    768 F.2d 686 (5th Cir. 1985) ..................................................................................... 19

*Valley Fin., Inc. v. United States*,
    629 F.2d 162 (D.C. Cir. 1980) ................................................................................... 16

*VFS Fin., Inc. v. Falcon Fifty LLC,*
    17 F. Supp. 3d 372 (S.D.N.Y. 2014) ................................................................ 12

*Walker Int'l Holdings, Ltd. v. Republic of Congo,*
    415 F.3d 413 (5th Cir. 2005) ........................................................................... 22

*Wallace ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood,*
    752 A.2d 1175 (Del. Ch. 1999) ............................................................. 8, 9, 10, 18

*Winner Acceptance Corp. v. Return on Cap. Corp.,*
    No. CIV.A. 3088-VP, 2008 WL 5352063 (Del. Ch. Dec. 23, 2008) ...................... 18

**Statutes**

22 U.S.C. § 611 .......................................................................................... 17

28 U.S.C. § 1603 ........................................................................................ 23

8 Del. C. § 211 ........................................................................................... 17

**Other Authorities**

1 Fletcher Cyc. Corp. ............................................................................. 13, 19

Executive Order 13835 ................................................................................... 5

Executive Order 13850 ................................................................................... 5

Executive Order 13884 ................................................................................... 5

**Rules**

Federal Rule of Civil Procedure 69 ........................................................... 7, 22, 23

**Regulations**

31 C.F.R. § 591.310 ................................................................................. 5, 22

31 C.F.R. § 591.407 ................................................................................. 5, 22

## Introduction

Plaintiff Girard Street, a hedge fund speculation vehicle, seeks extraordinary and unprecedented relief and even after two attempts, still has failed to state a claim for it.

In 2021, Girard Street acquired a note issued by Petróleos de Venezuela, S.A. ("PDVSA"), the national oil company of the Bolivarian Republic of Venezuela ("Venezuela" or the "Republic"), and guaranteed by PDVSA's affiliate PDVSA Petróleo S.A. ("Petróleo"). After taking no collection action for three years, Girard Street sued PDVSA and Petróleo and obtained a default judgment here that has since been vacated. Initially in a separate proceeding and now in a Consolidated Amended Complaint ("CAC"), Girard Street also seeks a declaration that PDVSA's wholly owned Delaware subsidiary, Defendant PDV Holding, Inc. ("PDVH"), is PDVSA's alter ego (Count III), as well as a turnover order of *PDVH's* assets (Count IV). PDVH's assets are shares in CITGO Holding, Inc., which owns Girard Street's real target: CITGO Petroleum Corporation ("CITGO"). In the typical alter ego claim, the plaintiff is a creditor of a corporation but seeks to pierce the corporate veil to reach the assets of the corporation's shareholder. Here, by contrast, Girard Street is a creditor of the corporation's shareholder and seeks to reverse-pierce the veil to reach the assets of the corporation. In addition to being utterly premature—there is no judgment, let alone an unsatisfied judgment, and thus the turnover request is improper—the claims fall far short of meeting the three requirements for reverse veil-piercing under Delaware law, which governs here. Counts III and IV against PDVH should therefore be dismissed.

*First*, there are and can be no plausible allegations suggesting "fraud or similar injustice" in the use of corporate form—in particular, none plausibly suggesting that PDVH is merely a sham corporation used to deceive or defraud creditors in general or Girard Street in particular. On the contrary, PDVH has existed for nearly three decades and is the indirect owner of a major U.S.

refiner. Girard Street does not allege that it was confused about the difference between PDVSA and PDVH, that it was deceived into thinking that PDVH would pay the note, or that PDVH is being used to hide PDVSA's assets. Indeed, Girard Street alleges no impairment beyond an inability to collect from PDVSA because other creditors have gotten to PDVSA's assets first, which is not grounds for veil-piercing. If anything, the supposed "fraud or injustice" here—that PDVH paid dividends to PDVSA and used its assets to help PDVSA pay other creditors—*enhanced* PDVSA's ability to satisfy its debts.

*Second*, the allegations fail to plausibly suggest "exclusive domination and control" by PDVSA over PDVH beyond what is typical—and sometimes obligatory—under Delaware law. Girard Street alleges sporadic instances of overlapping personnel and dividend payments from the subsidiary to the parent, but these are legal commonplaces. Girard Street also invokes Venezuelan officials' political statements and purported authority to act with respect to PDVH (*e.g.*, appoint directors), but fails to allege a single fact showing that these officials did anything at all, let alone so dominated the day-to-day operations and management of PDVH that the subsidiary simply functioned as a facade for PDVSA. Nor does Girard Street allege that PDVH controlled its parent, that any such control harmed Girard Street, or that PDVH siphoned funds from PDVSA that otherwise would be available to satisfy Girard Street's potential judgment against PDVSA—all crucial factors that Delaware courts consider when faced with a reverse veil-piercing request.

*Third*, Girard Street cannot demonstrate that reverse-piercing here would be equitable or serve the public interest. On the contrary, the note was originally entered into by a sophisticated Venezuelan noteholder (a Halliburton affiliate) that, despite selecting American courts to resolve disputes about the note, could have but chose not to add PDVH (or another American entity) as a guarantor. Girard Street, a sophisticated investor, acquired the note *after PDVSA was already*

*purportedly in default*. It also knew that PDVH had not provided a guaranty, pledge of collateral, or other assurance of payment. As such, Girard Street had actual or constructive knowledge of nearly every fact that it now alleges as a basis for disregarding PDVH's separate corporate existence, since these facts occurred before 2021 and were public. It acquired the note years after other creditors began asserting what are now over $21 billion in judgments against PDVSA and the Republic. U.S. sanctions law also forbids the attachment of PDVH's property without a license from the U.S. government, which is not alleged to have been issued. In other words, Girard Street, a Wall Street speculator, gambled on distressed foreign sovereign debt with eyes wide open as to the terms of the contract, the potential claims against PDVSA, the corporate relationship between PDVSA and PDVH, and the near certainty that it could not collect from the issuer. It is perverse for Girard Street now to throw itself before this Court and plead for the assistance of equity.

Though it correctly invokes Delaware law, the CAC also incorrectly proposes that federal common law might apply because a foreign entity (PDVSA) is "involved." Wrong. Fed. R. Civ. P. 69 directs the application of the law of the forum state to judgment enforcement proceedings, and New York courts evaluate a veil-piercing claim under the law of the jurisdiction where the corporation is incorporated (here, Delaware). Even if Rule 69 did not apply, federal common law would not govern. PDVH is an American corporation, not an agency or instrumentality of a foreign sovereign. In any event, the CAC fails to state a veil-piercing claim under federal common law, as the allegations do not come close to demonstrating PDVSA's extensive, "day-to-day" control such that PDVH's separate corporate status was ignored. PDVH should be dismissed from this case.

## Background

This is a suit on a promissory note (the "Note"). The contract giving rise to the Note (the "Note Agreement") was executed on June 29, 2016, between PDVSA (issuer), Petróleo

3

(guarantor), and Servicios Halliburton de Venezuela, S.A. ("SHVSA") (noteholder). ¶ 28.[1] Girard Street alleges that effective January 14, 2021—after the Note was already in default, ¶¶ 36–55— it acquired the Note from SHVSA under an assignment and acceptance. ¶ 30. Though Girard Street alleges that this was for an "agreed upon" consideration paid in cash, *id.*, it does not attach the purchase agreement (and the cited exhibit does not set forth the amount paid, *id.* & CAC Ex. 3).

In December 2023, Girard Street sued PDVSA and Petróleo for purported breaches of contract from 2017 through 2019. ¶¶ 40–53. After obtaining a default judgment of over $341.1 million, ¶ 66, it then filed a separate enforcement action (No. 24-cv-4448) seeking both a declaration that PDVH is PDVSA's alter ego and a turnover order against PDVH's property under N.Y. CPLR § 5225(b) and Fed. R. Civ. Proc. 69. PDVH is a Delaware corporation formed in 1997[2] that is wholly owned by PDVSA. ¶ 11. PDVH moved to dismiss that action, arguing that Girard Street had failed to state a claim for relief. On September 10, 2024, the Court vacated the underlying default judgment against PDVSA. ¶ 69. Girard Street then moved to consolidate all related actions and file an amended complaint. *See* No. 24-cv-4448, Dkt. 42. The court granted the consolidation motion and denied PDVH's fully briefed motion to dismiss in No. 24-cv-4448, without prejudice, as moot. *Id.*, Dkt. 46 at 2.

Taking Girard Street's allegations as true, nearly all the facts it relies on to support its alter-ego claim predate its 2021 purchase of the Note. Girard Street mostly cites to news reports and other public sources for its allegations, and it does not and cannot allege that the lion's share of these facts was beyond public knowledge when it purchased the Note.

---

[1] Unless noted, the CAC (Dkt. 47) is cited as "¶ __."

[2] Exhibit A (PDVH Certificate of Incorporation). *GemShares, LLC v. Kinney*, No. 17 CIV. 844 (CM), 2017 WL 2559232, at *17 (S.D.N.Y. June 2, 2017) (articles of incorporation filed with state authority are judicially noticeable on motion to dismiss).

The property Girard Street seeks to attach—PDVH's shares of CITGO Holding—are "blocked property" under the U.S. sanctions regime against Venezuela. E.O. 13850 (blocking property of PDVSA and its subsidiaries); E.O. 13884 (blocking property of the Venezuelan government and its subsidiaries); *see also* E.O. 13835 (restricting any transfer of equity in entities owned indirectly or directly more than 50% by Venezuela). No turnover order can issue without a specific license from the Treasury Department's Office of Foreign Assets Control ("OFAC"). 31 C.F.R. § 591.407 (2019) ("enforcement of any . . . judgment . . . purporting to transfer" blocked property "is prohibited unless authorized pursuant to a specific license issued by OFAC"); 31 C.F.R. § 591.310 (2015) (defining restricted transfers to include those procured under a judgment or execution). Girard Street alleges that it "received a license" for the transfer of the Note but not the transfer of PDVH's property. ¶ 30; *see also* CAC Ex. 4 (attaching expired license for the Note).

Girard Street purchased SHVSA's claim four years after the filing of litigation in the District of Delaware, in which creditors of PDVSA and the Republic[3]—including Girard Street and its affiliates—have pursued post-judgment enforcement proceedings seeking to execute on PDVSA's shares of PDVH.[4] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 17-mc-151-LPS (D. Del.) ("*Crystallex*"). The *Crystallex* court appointed a special master to oversee a public auction of the shares of PDVH itself. Eighteen creditors with over $21 billion in total judgments are participating in the Delaware proceedings.[5] Instead of acting diligently after the assignment, Girard Street waited nearly three years to sue on the Note in New York. ¶ 56. As a

---

[3] The district court in Delaware has held that PDVSA's assets can be attached to satisfy judgments against Venezuela on alter ego grounds. *See OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, 73 F.4th 157 (3d Cir. 2023). No court has held that PDVH is PDVSA's or Venezuela's alter ego.

[4] The Court may take judicial notice of "the status . . . and the substance of papers filed" in *Crystallex*. *Paskar v. City of New York*, 3 F. Supp. 3d 129, 134 (S.D.N.Y. 2014).

[5] *Crystallex*, Dkt. 1102, at 3–5 (D. Del. Apr. 3, 2024).

result, Girard Street missed the deadline to participate in the *Crystallex* process[6] (though it submitted several filings advising of its progress toward a judgment against PDVSA).[7] Stymied by its own lack of diligence from pursuing *PDVSA's* assets in Delaware, Girard Street now seeks to acquire *PDVH's* assets on the eve of PDVH itself potentially being sold.[8]

## Legal Standard and Applicable Law

To survive Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Though the court accepts well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff, *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016), it need not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action," *Iqbal*, 556 U.S. at 678.

Plaintiff's judgment enforcement claims against PDVH are governed by Rule 69(a). *See* CAC Count III (seeking declaratory relief in support of a turnover under Rule 69), Count IV (seeking a turnover order under Rule 69); *see also Trust v. Kummerfeld*, 153 F. App'x 761, 762 (2d Cir.

---

[6] *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. MC 17-151-LPS, 2024 WL 325133, at *2 (D. Del. Jan. 29, 2024) (setting deadline to participate as a creditor having "filed a motion for a writ of attachment meaningfully in advance of . . . January 12, 2024").

[7] *See Crystallex*, Dkt. 1038, Dkt. 1038-1 (Girard Street's notification of receipt of judgment); *see also Crystallex*, Dkt. 760, Dkt. 760-1, Dkt. 760-2 (claim update); *Crystallex*, Dkt. 672, Dkt. 672-1 (claiming to be a "prospective holder" of an "[a]ttached [j]udgment" against PDVSA).

[8] In so doing, according to the September 10, 2024 letter from the *Crystallex* special master to this Court, Girard Street is attempting to "circumvent" the *Crystallex* court and undermine the sale process there to the detriment of other creditors. *See Crystallex*, Dkt. 1302-1 at 14–15. The special master therefore moved to enjoin Girard Street from seeking to enforce any potential judgment against PDVH. *See id*. On September 27, 2024, the special master recommended a winning bid for the PDVH shares, with a sale hearing to follow. *See Crystallex*, Dkt. 1325. On October 9, the special master was also instructed to advise the Delaware court of "his position on whether (and, if so, how, by what mechanism, and on what schedule) to conduct proceedings regarding a determination as to whether PDVH is the alter ego of PDVSA." *See Crystallex*, Dkt. 1358 (oral order). PDVH has and continues to object to the *Crystallex* process, including the propriety of some of the attachments and the manner in which the shares are being sold.

2005) (applying Rule 69 to New York veil-piercing action "initiated as supplementary special pro-

ceedings under New York Civil Practice Law and Rules (CPLR) § 5225(b)"). Rule 69(a)(1) pro-

vides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judg-

ment or execution—must accord with the procedure of the state where the court is located, but a

federal statute governs to the extent it applies." As no relevant federal statute applies to turnover

or veil-piercing actions, New York law, including its choice-of-law rules, applies. *Karaha Bodas*

*Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70, 83 (2d Cir. 2002)

(applying, under Rule 69, the forum state's law "to determine what assets are subject to enforce-

ment, and thus available to judgment creditors"); *Dexia Credit Local v. Rogan*, 629 F.3d 612, 632–

33 (7th Cir. 2010) (applying forum state's law to determine whether to apply alter ego to reach

judgment debtor's assets held by third parties); *Cigna Prop. & Cas. Ins. Co. v. Polaris Pictures*

*Corp.*, 159 F.3d 412, 421 (9th Cir. 1998) (holding that California law governed attempt to add third

party "as a judgment debtor on an alter ego theory"); *Joint Venture Acquisition v. Misra*, No. 87

CIV. 5340 (RWS), 1992 WL 212352, at *1 (S.D.N.Y. Aug. 25, 1992) (applying New York choice-

of-law rules to determine whether Illinois or New York law applied in Rule 69 proceeding). Under

New York law, Plaintiff's request to pierce PDVH's corporate veil is governed by the law of the

state in which PDVH is incorporated: Delaware. *Aaron Richard Golub, Esquire, P.C. v. Blum*, No.

23-cv-10102 (JSR), 2024 WL 1376436, at *2 (S.D.N.Y. Apr. 1, 2024) ("Under New York choice-

of-law principles, the issue of whether the corporate veil may be pierced is determined under the

law of the state of incorporation.").

## Argument

### I.    Plaintiff Has Failed to Allege Alter Ego Under Delaware Law.

"Persuading a Delaware court to disregard the corporate entity is a difficult task." *Wallace*

*ex rel. Cencom Cable Income Partners II, Inc., L.P. v. Wood*, 752 A.2d 1175, 1183 (Del. Ch. 1999).

It requires a plaintiff to prove two elements: "exclusive domination and control" of a corporation by a shareholder and that "the corporate structure cause[d] fraud or similar injustice." *Id*. at 1184. In addition, a plaintiff in a reverse-piercing case must prove a third element: that taking the extraordinary step of holding a corporation liable for the debts of its shareholder would be equitable in light of the interests of the corporation's creditors, innocent third parties, and other important public policies. *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 716 (Del. Ch. 2021). Even after supplementing its allegations to respond to the deficiencies noted by PDVH's first motion to dismiss, Plaintiff has failed to adequately plead these three requirements.

### A. Plaintiff Has Not Alleged "Fraud or Similar Injustice" to Justify Piercing PDVH's Corporate Veil.

The alter ego claim fails at the threshold because Plaintiff has not alleged facts plausibly showing misuse of the corporate form to commit "fraud or similar injustice." The Delaware Supreme Court has held that, "[t]o state a 'veil-piercing claim,' the plaintiff must plead facts supporting an inference that the corporation, through its alter-ego, has created *a sham entity designed to defraud investors and creditors*." *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003) (emphasis added); *accord Wallace*, 752 A.2d at 1184 ("Effectively, the corporation must be a sham and exist for no other purpose than as a vehicle for fraud."). Attempts to enforce a judgment through reverse-piercing are no exception: As the Delaware Supreme Court also has held, "[a] creditor of the parent corporation may not, *in the absence of fraud*, disregard the separate existence of a subsidiary corporation and look directly to specific assets of a subsidiary for satisfaction of his claim against the parent." *Buechner v. Farbenfabriken Bayer Aktiengesellschaft*, 154 A.2d 684, 687 (Del. 1959) (emphasis added). The requirement to establish that "the corporate structure cause[s] fraud or similar injustice" is a high bar, *Wallace*, 752 A.2d at 1184, which the CAC has not met.

As PDVH explained in its initial Motion to Dismiss, the initial complaint merely alleged the conclusion that "PDVSA abused the corporate form to perpetrate a wrong or injustice," Dkt. 26 at 9 (citing Dkt. 1 at ¶ 127), without even attempting to allege fraud or a similar injustice. Plaintiff pointed only to its inability to satisfy its judgment out of PDVSA's assets, *see* Dkt. 1 ¶ 142, which is not a basis to pierce the veil under Delaware law. *See Trevino v. Merscorp, Inc.*, 583 F. Supp. 2d 521, 530 (D. Del. 2008) (citing *Mason v. Network of Wilmington, Inc.*, No. Civ. A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005)) ("Delaware courts have held that the possibility that a plaintiff may have difficulty enforcing a judgment is not an injustice warranting piercing the corporate veil.").[9]

The CAC purports to remedy that deficiency by changing "wrong or injustice" to "fraud or injustice," *e.g.*, ¶ 171, and through a conclusory allegation that "PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors," *e.g.*, *id.* ¶ 221(d). But Plaintiff still does not and cannot allege facts indicating that PDVSA "created [PDVH as] a sham entity designed to defraud investors and creditors," *Crosse*, 836 A.2d at 497, or that PDVH—the longstanding parent of one of the country's largest independent refiners and other companies— "exist[s] for no other purpose than as a vehicle for fraud," *Wallace*, 752 A.2d at 1184.

Plaintiff attempts to satisfy the fraud element by alleging that PDVSA controls PDVH, has disregarded its corporate separateness, left it undercapitalized, siphoned its funds, and operated it as a mere facade. *See, e.g.*, ¶ 171.[10] But "exclusive domination and control" is a separate prong of

---

[9] As explained below, Girard Street's inability to recover is not really the injustice that it claims, as there were assets available to satisfy PDVSA's debts—Girard Street just lost the race to the courthouse to recover against them to other creditors.

[10] *See also, e.g.*, *id.* ¶ 6 ("PDVH is merely a façade for PDVSA and Venezuela's dominance, resulting in an abuse of the corporate form that perpetrates a wrong or injustice."); *id.* ¶¶ 73–76 (alleging that Venezuela "operat[ing] PDVSA, PDVH, Citgo Holding, and Citgo as a single

the Delaware veil-piercing test from fraud. *Wallace*, 752 A.2d at 1184. *It does not show fraud itself.* And undercapitalization, failure to observe corporate formalities, siphoning of funds, and whether the corporation operated as a mere facade for the dominant shareholder are factors considered in determining whether the exclusive domination and control prong is satisfied. *See* Part I.B, *infra*.

Girard Street also alleges that "PDVH is a sham entity used by PDVSA for the purpose of defrauding creditors by advancing PDVSA's (and in turn, Venezuela's) interests while avoiding its obligations." ¶ 221(d); *accord id.* ¶¶ 174, 183, 191. It is not entirely clear what Plaintiff means by this. To the extent it means that PDVSA derives benefits from the operations of a corporate subsidiary while relying on the corporate veil to segregate each entity's assets and liabilities, Plaintiff is simply restating the fundamental principle of corporate separateness, which is hardly a fraud. *See, e.g.*, *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries.") (internal quotation marks omitted).

To the extent that the allegation refers to the CAC's convoluted and internally inconsistent theory that PDVH helped PDVSA avoid obligations to creditors both by paying dividends to PDVSA and by not paying them, Plaintiff is misguided. *See* ¶¶ 195, 221(b). As an initial matter, while the CAC alleges that PDVH's payment of dividends in 2015 (a year before the Note Agreement was even executed, *see id.* ¶ 28) "was consistent with" an intention by Venezuela to remove assets from the reach of creditors, *id.* ¶ 119, the Supreme Court's decisions in *Twombly* and *Iqbal* make clear that, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"

---

economic unit, commingling the funds[,] . . . disregarding the corporate form," siphoning funds, and "treat[ing] PDVH as an arm of the Venezuelan state . . . results in the operation of PDVH as a sham company, without a separate identity, [and] is wrongful and an injustice").

*Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Indeed, the CAC itself alleges facts indicating why PDVH declared the dividends: Venezuela and PDVSA desperately needed the funds. *See, e.g.*, ¶¶ 84, 118 (noting that from 2014 to 2016, oil prices collapsed from $100 to $25 per barrel, PDVSA's revenues "plummeted" from over $120 billion to under $50 billion, cash reserves fell more than $10 billion, short-term liabilities rose to nearly $14 billion in 2015, and "PDVSA struggled to pay suppliers and joint venture partners"). If anything, therefore, the dividends *enhanced* PDVSA's ability to repay its debts.

The other two pieces of the alleged scheme are similarly belied by the CAC's own allegations. First, while Plaintiff hypothesizes that PDVH pledged certain of its assets to deplete attachable value, the CAC makes clear that the pledges were used to help PDVSA finance obligations owed to *other creditors*. *See id.* ¶¶ 130, 132; *see also id.* ¶ 87 (alleging that Venezuela's low credit rating in 2016 "made it nearly impossible for the Venezuelan government or PDVSA to engage in unsecured financing"). Second, Plaintiff complains that PDVH should be paying dividends to PDVSA to allow PDVSA to pay its creditors, but the CAC itself alleges that PDVH has been blocked from issuing dividends since 2017, when the President of the United States issued an Executive Order "explicitly prohibiting 'dividend payments or other distributions of profits to the Government of Venezuela from any entity owned or controlled, directly or indirectly, by the Government of Venezuela.'" ¶ 120 (quoting E.O. 13808).

Even if Plaintiff's theory were not implausible and contradicted by the CAC's own allegations, it could not supply the requisite fraud or injustice under Delaware law. For example, in *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, a plaintiff alleged a "sale was a sham intended to place the assets out of certain creditors' reach." No. 2022-0378-LWW, 2023 WL 5688392, at *1 (Del. Ch. Sept. 5, 2023). The Delaware Chancery Court dismissed the veil-piercing

claim because even if the sale could be construed as a fraudulent transfer, the alleged conduct was not an "inequitable use of the corporate form itself as a sham." *Id.* at \*6. In any event, the Third Circuit has already held that the exact same dividends and pledges that Plaintiff complains about here do *not* constitute a fraudulent transfer under Delaware law, because transfers by a non-debtor (here, PDVH) to a debtor (here, PDVSA) cannot be fraudulent as to the debtor's creditors (here, Plaintiff). *Crystallex Int'l Corp. v. Petróleos de Venezuela, S.A.*, 879 F.3d 79, 86 (3d Cir. 2018).[11]

Having failed to meet the "fraud or similar injustice" prong of the alter ego test, nothing further is needed to hold that the alter ego claim fails as a matter of bedrock Delaware law. *See, e.g.*, *VFS Fin., Inc. v. Falcon Fifty LLC*, 17 F. Supp. 3d 372, 381 (S.D.N.Y. 2014) (dismissing Delaware alter ego claim for failure to allege fraud or similar injustice); *LaCourte v. JP Morgan Chase & Co.*, No. 12 Civ. 9453(JSR), 2013 WL 4830935, at \*6 (S.D.N.Y. Sept. 4, 2013) (same). Yet the CAC is deficient for other reasons as well.

### B.  Plaintiff Has Not Alleged "Exclusive Domination and Control."

Even if the CAC had sufficiently alleged fraud or similar injustice, Plaintiff's allegations of "extensive control" by PDVSA[12] over PDVH are conclusory or otherwise insufficient. Delaware courts consider the following non-dispositive factors when assessing "extensive control":

---

[11] The Third Circuit left open the possibility that a transfer by a non-debtor could be considered fraudulent if the non-debtor were the alter ego of the debtor. *Crystallex*, 879 F.3d at 86. But if PDVH's dividends could themselves have established alter ego, then the Third Circuit would not have ordered dismissal of the fraudulent transfer claim.

[12] The complaint relies on *OI Eur. Grp. B.V.*, 73 F.4th at 172 (3d Cir. 2023), to suggest that PDVSA and Venezuela are alter egos and thus that the conduct or statements of the Republic or its officials can be imputed to PDVSA. ¶ 110. Plaintiff must ultimately prove that the Third Circuit's decision is binding on these proceedings or otherwise establishes alter ego between the Republic and PDVSA. For purposes of this motion to dismiss, PDVH is assuming that the CAC adequately alleges that PDVSA and Venezuela are alter egos, but PDVH does not agree with Plaintiff's characterization of the Third Circuit's decision and does not concede that it is collaterally estopped from contesting the PDVSA-Republic alter ego issue on the merits.

"(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the controlling shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the controlling shareholder." *Sprint Nextel Corp. v. iPCS, Inc.*, No. 3746–VCP, 2008 WL 2737409, at *11 (Del. Ch. July 14, 2008); *Manichaean Cap.*, 251 A.3d at 706–07 (considering same factors in reverse veil-piercing context); *Fantazia Int'l Corp. v. CPL Furs N.Y., Inc.,* 889 N.Y.S.2d 28 (N.Y. App. Div. 2009) (similar). The CAC recites most of these factors, *e.g.*, ¶¶ 187, 189, 221(b), but fails to allege facts supporting a finding of control here.[13]

*Undercapitalization*—To the extent PDVH's capitalization is even relevant in a reverse veil-piercing case (see the discussion of fund-siphoning below), Plaintiff does not allege that PDVH "was [not] adequately capitalized for the undertaking" of being a holding company for a refiner and marketer of petroleum products, either upon formation in 1997 or at any other time. The CAC's conclusory allegation that PDVH was undercapitalized because it paid excessive dividends to PDVSA and thus lacked funds to pay any more dividends, *see* ¶ 187, is not only logically impenetrable but also fails to establish that PDVH was undercapitalized for its own undertakings. *See* 1 Fletcher Cyc. Corp. § 41.33 ("'Inadequate capitalization' . . . generally means capitalization very small in relation to the nature of the business of the corporation and the risks attendant to such businesses. Adequacy of capitalization must be measured at the time of incorporation because it reveals whether the corporation was created to avoid liability." (footnote omitted)).

*Solvency*—"Under Delaware law, a corporation is insolvent if it has: '1) a deficiency of

---

[13] The CAC divides the Delaware law (¶¶ 184–99, 221) and *Bancec* allegations (¶¶ 175–83, 220). PDVH accepts this divide only to address why Plaintiff has failed to state a claim under either test. For the avoidance of doubt, PDVH does not concede that the allegations attributed to the federal common law standard support piercing under Delaware law, or vice versa.

assets below liabilities with no reasonable prospect that the business can be successfully continued in the face thereof, or 2) an inability to meet maturing obligations as they fall due in the ordinary course of business.'" *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 384 (3d Cir. 2007) (quoting *Prod. Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 782 (Del. Ch. 2004)). Although the CAC alleges the conclusions that PDVH "cannot pay its commercial debts when they are due" and was "unable to satisfy [its] financial obligations in the ordinary course of business" after the 2015 dividends, ¶¶ 173, 175, there are no facts supporting such conclusions, which in any event are implausible given that PDVH continues as a going concern more than nine years later and is currently the subject of a multi-billion-dollar bid in a judicial sale to satisfy debts owed to other PDVSA creditors. *See In re Tropicana Ent., LLC*, 520 B.R. 455, 472 (Bankr. D. Del. 2014) (mere recitation of "conclusory statements" insufficient to plead insolvency under Delaware law).

*Corporate Formalities*—Plaintiff again recites conclusory buzzwords intended to map onto Delaware law. ¶ 177 (alleging "on information and belief" that "some of the corporate records and/or corporate formalities relating to corporate records are incomplete"); ¶ 189 (same). The CAC is bereft of actual examples. Plaintiff does allege that "PDVSA failed to observe corporate formalities when its President reviewed PDVH's contracts," ¶ 189, but reviewing a subsidiary's contracts is not a failure to observe "corporate formalities." *See, e.g.*, *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1459 (2d Cir. 1995) ("[T]he district court correctly concluded that it could find no domination based on" the fact that the parent's approval was required for the subsidiary's transactions—"conduct [that] is typical of a majority shareholder or parent corporation.") (collecting cases); *In re BH S & B Holdings LLC*, 420 B.R. 112, 138 (Bankr. S.D.N.Y. 2009) ("Courts refuse to pierce the veil just because parent corporations retain decision-making authority over subsidiaries.") (collecting cases). Even so, the allegation is conclusory. Though the CAC alleges that PDVSA's president had

*authority* to review PDVH contracts and that a Venezuelan official had the *authority* to modify PDVH's management and administration, ¶¶ 141, 189, Plaintiff cites no example that either power was actually exercised as to PDVH, let alone to override the PDVH board's business judgment.

*Siphoning of Funds*—Plaintiff repeatedly characterizes PDVH's payment of dividends to its shareholder in 2015 as "siphoning funds" or "commingling funds." ¶ 187. That is nonsense. "Siphoning suggests 'the improper taking of funds that the owner was not legally entitled to receive.'" *In re Autobacs Strauss, Inc.*, 473 B.R. 525, 557 (Bankr. D. Del. 2012) (quoting *In re The Heritage Org., L.L.C.*, 413 B.R. 438, 517 n.69 (Bankr. N.D. Tex. 2009)). The term does not apply to the issuance of properly declared dividends, to which a shareholder is legally entitled. *See The Heritage Org.*, 413 B.R. at 517 n.69 (explaining that "siphoning funds is different than making distributions to members that are permitted by law").

Plaintiff suggests it was somehow improper for PDVH to provide these dividends to its parent when its parent was in extreme financial distress. But directors of a wholly owned subsidiary (like PDVH) are obligated by their fiduciary duties to operate the company for the benefit of their shareholder (like PDVSA) and indeed are authorized by law to follow a sole shareholder's instructions. *See, e.g.*, *Anadarko Petroleum Corp. v. Panhandle E. Corp.*, 545 A.2d 1171, 1174 (Del. 1988) ("[I]n a parent and wholly-owned subsidiary context, the directors of the subsidiary are obligated only to manage the affairs of the subsidiary in the best interests of the parent and its shareholders."); *Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 201–03 (Del. Ch. 2006), *aff'd sub nom. Trenwick Am. Litig. Tr. v. Billett*, 931 A.2d 438, 202 (Del. 2007) (explaining that directors of a subsidiary are "entitled to follow the parent's instructions unless those instructions require[] the board to violate the legal rights of others," and have no "duty to second-guess the business judgment of its parent corporation when following and supporting the parent's

strategy would not violate any legal obligation the subsidiary owes to another").

Moreover, while it makes sense in the traditional veil-piercing context to consider whether the parent "siphoned" its funds, that conduct has less relevance (if any) in the reverse-piercing context, where it helps rather than hurts the parent's creditor to enhance the parent's financial standing. *See Pac. Dev., Inc. v. United States*, No. 77-0690, 1979 WL 1283, at *2 (D.D.C. Jan. 3, 1979), *aff'd sub nom. Valley Fin., Inc. v. United States*, 629 F.2d 162 (D.C. Cir. 1980).[14]

*General Facade*—Plaintiff alleges sporadic instances of overlap among the members of the boards of PDVSA and PDVH or that PDVH board members also were employees of PDVSA (sometimes simultaneously but more often at different times, such as the allegation that Carlos Jorda worked for PDVSA "in the early 2000s" and then "served as a Director of PDVH from 2023–2024"). ¶¶ 143–63. It is well-settled Delaware law, however, that the overlap of personnel and directors between members of a corporate family does not suffice to pierce the corporate veil. *Nieves v. Insight Bldg. Co., LLC*, No. CV 2019-0464-SG, 2020 WL 4463425, at *8 (Del. Ch. Aug. 4, 2020) (explaining that Delaware law presumes a subsidiary is distinct from its parent and that "[s]imilarities between entities, such as overlap of personnel, do not negate this basic principle: This rule applies even where one corporation wholly owns another and even though the entities have identical officers and directors." (internal quotation marks omitted)); *Principal Growth Strategies, LLC v. AGH Parent LLC*, No. 2019-0431-JTL, 2024 WL 274246, at *16 (Del. Ch. Jan. 25, 2024) (same). The suggestion that PDVSA dominated PDVH by exercising board appointments

---

[14] Girard Street cherry-picks snippets of allegations from *PDV USA, Inc. v. Interamerican Consulting Inc.*, No. 20-cv-3699 (S.D.N.Y.) to contend that "[s]ubsidiaries of PDVH have . . . also had their funds siphoned to PDVSA." ¶¶ 98–102. That suit does not concern PDVH (PDV USA's parent) but even so, Girard Street grossly mischaracterizes the complaint, which, as the CAC acknowledges, alleges that PDVSA, *not* PDVH or its subsidiary PDV USA, "provided the $50 million earmarked for" a consulting contract between Interamerican Consulting, Inc. and PDV USA. ¶ 100. Accordingly, there was no siphoning of funds *to PDVSA*, as the CAC incorrectly states.

(¶¶ 5, 91, 143, 148) is an immaterial tautology: sole shareholders not only have the power to ap-point directors but are also the only ones authorized to do so. Del. Code Ann. tit. 8, § 211(b) (2009) (providing that directors are elected by shareholder(s) of company); *EMAK Worldwide, Inc. v. Kurz*, 50 A.3d 429, 433 (Del. 2012) ("The fundamental governance right possessed by sharehold-ers is the ability to vote for the directors the shareholder wants to oversee the firm."). And as noted, PDVH's board had no duty to act "in the best interest of all residual beneficiaries . . . including creditors" of PDVSA. ¶ 221. Plaintiff does not allege any example suggesting that PDVH's direc-tors were absentees who did not perform the ordinary duties of a corporate director.[15]

Plaintiff's allegation that PDVH has registered with the Department of Justice as a foreign agent of PDVSA also does not show that PDVH is a mere facade. ¶¶ 93–97. Apart from the fact that this registration was not a secret—and thus there was no "facade"—the CAC acknowledges that PDVH's advocacy to the U.S. government advances PDVH's *own interests*, including those of its subsidiaries. ¶ 93 (alleging PDVH's participation in legal proceedings in which it "is either a party or in which the value of PDVH and its subsidiaries is implicated"); ¶ 94 (alleging that PDVH director conversed with U.S. Government about protecting "the assets of PDVH and its subsidiaries" from claims brought by creditors of the Republic); ¶ 96 (same).[16]

---

[15] Girard Street alleges that the replacement of six CITGO board members demonstrates disre-gard of corporate formalities. ¶¶ 145–47. These conclusory allegations fail to identify what for-malities were disregarded and in any event do not involve either PDVSA or PDVH.

[16] Moreover, it is immaterial to a Delaware law alter ego analysis whether PDVH meets a distinct statutory regulatory definition under FARA. *See* ¶ 93. Indeed, FARA requires registration for "agents" of a foreign principal engaging in certain activities identified in the statute, and it has adopted a concept of agency far broader than that used to establish liability under the common law. *See Att'y Gen. of U.S. v. Irish N. Aid Comm*., 668 F.2d 159, 161 (2d Cir. 1982) (holding that the agency relationship is defined by the statute, not by common law standards). Under the statute's definitions, even a request from a foreign corporation is sufficient to establish an agency relation-ship, as is any indirect supervision or direction by a foreign corporation. 22 U.S.C. § 611(c). Hold-ing that the standards for FARA registration are sufficient to pierce the veil would have the effect of piercing all corporate structures involving a foreign parent.

Plaintiff's remaining allegations of control are, once again, conclusory. *E.g.*, ¶ 186 ("At all relevant times, PDVSA and PDVH operated as one entity."); ¶ 194 ("PDVSA has exercised significant and extensive dominion and control over PDVH."); *see also* ¶¶ 75, 171, 191 (same). This will not suffice. Delaware courts are clear that piercing the veil should be rare. *E.g.*, *Wallace*, 752 A.2d at 1183-84; *Winner Acceptance Corp. v. Return on Cap. Corp.*, No. CIV.A. 3088-VP, 2008 WL 5352063, at *5 (Del. Ch. Dec. 23, 2008) (piercing the veil occurs in an "exceptional case"). Plaintiff's conclusory march through the "extensive control" prong of the alter ego test demonstrates nothing out of the ordinary for wholly owned Delaware subsidiaries.

### C. Plaintiff Has Not Adequately Alleged that Reverse Veil-Piercing Is Equitable or in the Public Interest.

In a reverse-piercing case, a plaintiff must also demonstrate that disregarding corporate separateness is equitable in light of the interests of creditors, third parties, and public policy. Eight factors inform this inquiry.[17] *Manichaean Cap.,* 251 A.3d at 715. The CAC does not adequately allege any of the relevant factors and instead reveals that reverse-piercing here would be *in*equitable, which is another reason to dismiss Plaintiff's claims against PDVH.

*First*, Plaintiff cannot establish "reasonable reliance upon a lack of separate entity status between" PDVSA and PDVH (Factor 3). Plaintiff (and its Venezuelan predecessor SHVSA)

---

[17] These are: (1) the potential impairment of "the legitimate expectations of any adversely affected [non-responsible] shareholders" and the potential for "a precedent troubling to shareholders generally"; (2) the degree of the subsidiary's exercise of "dominion and control" over the parent; (3) the degree to which the injury "is related to [that] dominion and control" or the plaintiff's "reasonable reliance upon a lack of separate entity status"; (4) the degree to which reverse piercing would serve "the public convenience, as articulated by the Delaware General Corporation Law and Delaware's common law"; (5) "the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider"; (6) "the possibility that the [plaintiff] is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief"; (7) the potential harm to the subsidiary's "innocent third-party creditors"; and (8) "the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt." *Manichaean*, 251 A.3d at 715 (cleaned up).

bought the Note with actual or constructive knowledge of the facts that it now alleges to support alter ego but consciously declined to obtain any guaranty, pledge of collateral, or other protection from PDVH. "[V]eil piercing in the contract context is infrequent [] because the party seeking relief 'is presumed to have voluntarily and knowingly entered into an agreement with a corporate entity, and is expected to suffer the consequences of limited liability associated with the business form.'" *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195, 198 (2d Cir. 2005) (quoting 1 Fletcher Cyc. Corp. § 41.85).[18] Courts consistently require a party seeking to pierce the corporate veil in a contract case to demonstrate that it was duped about the separate corporate existence of its counterparty's affiliates *at the time of contracting*; otherwise, there is no equitable basis to pursue a corporate affiliate from which it could have negotiated a guaranty (or other protection). *E.g.*, *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 693 (5th Cir. 1985) ("If the creditor wants to be able to hold the parent liable for the subsidiary's debts, it can contract for this.").[19] Here the relevant contract is the assignment to Plaintiff in 2021. ¶ 30. Plaintiff knew that the Note Agreement lacked a guaranty from PDVH and acquired the Note knowing the facts up to that date. That

---

[18] Similarly, Delaware law presumptively protects parent companies from tortious interference claims arising from actions taken by subsidiaries at the parent's purported direction. In explaining that the affiliate privilege is designed in part to prevent "faulty approaches to corporate veil piercing," Delaware courts conclude that "[a] party who wishes to have a parent entity or other controller backstop the obligations of the controlled entity can do so by contract, either by making the parent a party to the agreement or by obtaining a guarantee. A party should not be able to . . . reap the benefits of protections that it did not obtain at the bargaining table." *Buck v. Viking Holding Mgmt. Co. LLC*, No. CV N20C-08-249 AML (CCLD), 2021 WL 673459, at *6 n.60 (Del. Super. Ct. Feb. 22, 2021) (LeGrow, J.) (internal quotation marks omitted) (collecting cases).

[19] *Accord Eitzen Chem. (Singapore) PTE, Ltd. v. Carib Petrol.*, 749 F. App'x 765, 770 (11th Cir. 2018) (per curiam) (applying federal common law); *Jab Energy Sols. II, L.L.C. v. Servicio Marina Superior, L.L.C.*, 640 F. App'x 373, 379 (5th Cir. 2016) (per curiam); *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652 (7th Cir. 2015) (Illinois law); *Se. Tex. Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 679 n.16 (6th Cir. 2006) (citing Fletcher treatise; applying state law); *Perpetual Real Estate Servs., Inc. v. Michaelson Props., Inc.*, 974 F.2d 545, 550 (4th Cir. 1992) (same); *Cascade Energy & Metals Corp. v. Banks*, 896 F.2d 1557, 1577 (10th Cir. 1990) (Utah law).

executing directly against PDVSA or Petróleo may have been difficult does not demonstrate that Plaintiff relied upon the alleged lack of separateness between PDVSA and PDVH.

Furthermore, Plaintiff did not inherit SHVSA's knowledge as though it were frozen in 2016, free to ignore anything that happened from 2016 to 2021. *See, e.g.*, ¶¶ 122, 123, 126, 129–34, 141, 142. On the contrary, speculators like Plaintiff acquire distressed debt at a substantial discount to face value precisely because they anticipate the difficulty of collection. But even if, contrary to common sense, Plaintiff 's knowledge were judged as of the time SHVSA obtained the Note five years earlier, most of Plaintiff's alleged alter ego facts predate the June 2016 Note Agreement as well.[20] If Plaintiff is deemed the successor to SHVSA's knowledge, then it also succeeded to SHVSA's knowing failure to obtain a guaranty or collateral pledge from PDVH.[21] *Hyosung Am., Inc. v. Sumagh Textile Co., Ltd.*, 934 F. Supp. 570, 576 (S.D.N.Y. 1996) ("[T]he knowledge of an assignor must be attributed to its assignee."). The CAC alleges that SHVSA knew when contracting that PDVSA lacked assets and faced crushing liabilities. ¶¶ 86, 88, 128. The Second Circuit has instructed that piercing the corporate veil to reach an affiliate is not appropriate where a party knowingly contracts with a financially distressed counterparty but does not extract a guaranty from the later-alleged alter ego at the time of contracting. *See Brunswick Corp. v. Waxman*, 599 F.2d 34, 36 (2d Cir. 1979). This complements the broader point that it is not inequitable to hold a sophisticated party to the terms of its agreement when, at the time of contracting, it knew all the facts that it later alleges as a basis to pierce the corporate veil between its counterparty and an affiliate.

*Second*, Plaintiff does not allege that PDVH controlled PDVSA (Factor 2) or that PDVH itself engaged in "wrongful conduct" (Factor 5). On the contrary, it alleges that *PDVSA* engaged

---

[20] *See, e.g.*, ¶¶ 77, 93, 109–16, 119, 136, 138, 148–62, 178.
[21] Indeed, the Note Agreement itself *does* provide for a guarantor: Petróleo. This shows that SHVSA could and did know how to bargain for a guaranty from one of PDVSA's affiliates.

in "wrongful conduct," *see* ¶¶ 183, 197, and the allegations show that PDVH acted consistently with its fiduciary obligations and its authority to follow the instructions of its sole shareholder. Plaintiff makes no allegation—nor could it—that PDVH's nonexistent control over PDVSA or nonexistent wrongful conduct caused Plaintiff's injury (*i.e.*, PDVSA's failure to pay on the Note) (Factor 3). Indeed, Plaintiff alleges that eight years ago, PDVSA left PDVH undercapitalized by causing it to pay dividends and to make pledges to support PDVSA's own borrowing. *See* ¶¶ 187– 88. As noted above, this only enhanced PDVSA's ability to pay.

*Third*, piercing PDVH's veil threatens PDVH's third-party creditors and any new share-holders (Factors 1, 6, 7), as the special master in *Crystallex* recently informed this Court. *See Crystallex*, Dkt. 1302-1 at 19 (Girard Street is "seeking to circumvent the [*Crystallex*] process and jump the line ahead of other creditors who participated in the sales process"); *see also Manichaean*, 251 A.3d at 716 (assessing potential harm to "innocent shareholders or creditors"). Plaintiff alleges that piercing would "not impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct that gave rise to the claim." ¶ 192. This ignores that if PDVH is sold in the *Crystallex* process, then execution against PDVH's assets will have interfered with the "legitimate expectations" of PDVH's (potential and foreseeable) new shareholders.

*Fourth*, Plaintiff is wrong that piercing PDVH's veil "would not establish a precedent trou-bling to shareholders generally" (¶ 192) or disserve the "public convenience" (¶ 196) (Factors 1 & 4).[22] As explained above, Plaintiff seeks to pierce PDVH's veil based on conduct that under Dela-ware jurisprudence does *not* warrant disregard of the corporate form. A decision in Plaintiff's favor

---

[22] Girard Street alleges that piercing PDVH's veil would advance "New York's recognized inter-est as a national and international center of finance and commerce." ¶ 196. This is immaterial since the relevant public policy is that of Delaware (Factor 4), and to the extent that New York courts attempt to dilute Delaware's alter ego rules, doing so would discourage Delaware corporations from transacting business in New York, contrary to New York's interest.

would thus contravene Delaware public policy and dilute Delaware law's stringent protection of corporate separateness. Moreover, *Plaintiff* 's requested relief is currently prohibited under U.S. sanctions law (Factor 4) absent a license from OFAC, which it has not alleged to have sought or obtained. 31 C.F.R. § 591.407; 31 C.F.R. § 591.310; *cf.* ¶ 30 (license for note but not attachment).

*Finally*, Plaintiff had another remedy available to it (Factor 8): pursuing its claims against PDVSA diligently and seeking to attach the shares of PDVH through, or parallel to, the *Crystallex* process. *See Crystallex*, Dkt. 1302-1 at 20 (noting Plaintiff's "participation" in *Crystallex*). Where "traditional judgment collection measures" provide a practically available remedy, "reverse piercing . . . would be unnecessarily extreme and inappropriate." *Manichaean*, 251 A.3d at 718.

## II.    *Bancec* Does Not Apply, But Even If It Did, Plaintiff Fails to State a Claim.

Without citation or explanation, the CAC suggests (¶¶ 175–83, 220) that veil-piercing should be adjudicated under federal common law standards, in particular those enunciated in *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") to govern the allocation of liability between a foreign state and a foreign sovereign instrumentality. This is incorrect. Rule 69 requires (through New York's choice-of-law rules) that Delaware veil-piercing law apply. But the CAC does not adequately state an alter ego claim even under *Bancec*.

### A.    *Bancec* Is Inapplicable.

Second Circuit precedent requires application of state law to judgment enforcement actions, even where the case involves a judgment against a foreign state. *See Karaha Bodas Co.*, 313 F.3d at 83 (applying, pursuant to Rule 69, the law of the forum state "to determine what assets are subject to enforcement, and thus available to judgment creditors" in an enforcement action against a foreign state); *accord Walker Int'l Holdings, Ltd. v. Republic of Congo*, 415 F.3d 413, 416 (5th Cir. 2005) (state law applies to "the underlying garnishment proceeding" against a foreign state); *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010) ("California law on the

enforcement of judgments applies to this suit insofar as it does not conflict with the FSIA.").

Nor can *Bancec* displace the command of Rule 69. Rule 69's dictate to apply state law has the force of statute, *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 107 n.14 (2d Cir. 2013), and federal common law can only apply in the absence of a statute, *see City of Milwaukee v. Illinois & Michigan*, 451 U.S. 304, 313 (1981). Even in the absence of Rule 69, *Bancec* would not apply here. *Bancec* involved the attribution of liability between a foreign state and its foreign sovereign instrumentality, to which question the Supreme Court held that principles of federal common law and international law applied. 462 U.S. at 623. Unlike *Bancec*, this case concerns an attempt to pierce the veil of a domestic corporation, a question governed by state law given the states' "compelling policy interest" in ensuring the separate existence of corporations organized under their protection. *Energy Coal, S.p.A. v. CITGO Petroleum Corp.*, No. 2:14-CV-03092, 2015 WL 5123867, at *3 (W.D. La. Aug. 31, 2015), *aff'd sub nom*, 836 F.3d 457, 463 (5th Cir. 2016) (holding that Delaware law applied to attempt to hold CITGO liable as the alter ego of Petróleo, a Venezuelan state entity).[23] The Supreme Court has never held that federal common law can be applied to pierce the veil of a domestic corporation merely because it has a foreign sovereign instrumentality as a shareholder, and indeed, *Bancec*'s repeated references to a foreign sovereign "instrumentality" exclude American corporations by definition.[24] Deference to the veil-piercing law of the state of incorporation is so embedded in the law that it applies even where, as here (¶ 26), the parties explicitly chose a different jurisdiction's law to resolve their disputes. *See*, *e.g.*,

---

[23] *Kirschenbaum v. Assa Corp.*, 934 F.3d 191 (2d Cir. 2019), is not to the contrary. It concerned "the upstream question of whether" the court had FSIA jurisdiction, a question to which federal law applies. *Id.* at 196 n.5. Here, the issue is the merits of whether Plaintiff can eventually enforce a judgment against PDVH and its property. Under Rule 69, Delaware law governs that question.
[24] The FSIA defines an "agency or instrumentality of a foreign state" as an entity that is *not* "a citizen of a State of the United States." 28 U.S.C. § 1603(b)(3).

*Blue Whale Corp. v. Grand China Shipping Dev. Co.*, 722 F.3d 488, 496 (2d Cir. 2013) (declining

to apply contractual choice-of-law provision to alter ego component of attachment claim).[25]

### B.  Plaintiff Cannot Establish "Extensive Control" Under *Bancec.*

Even under *Bancec*, Plaintiff fails to state an alter ego claim. In the Second Circuit, the

"touchstone inquiry" of *Bancec*'s "extensive control" prong is "whether the sovereign state exer-

cises significant and repeated control over the instrumentality's day-to-day operations." *Gater As-*

*sets Ltd. v. AO Moldovagaz*, 2 F.4th 42, 55 (2d Cir. 2021). "Assist[ing]" the sovereign in carrying

out its "policies and goals" is insufficient. *Id.* And "[a]n exercise of power incidental to ownership

[] is not synonymous with control over the instrumentality's day-to-day operations." *Id.* at 56.

None of Plaintiff's *Bancec* allegations reflect "day-to-day" control. Many (like the pay-

ment of dividends) are premised on extraordinary rather than day-to-day occurrences or on conduct

(like appointing directors or having overlapping directors) that evinces the ordinary "power inci-

dental to ownership" that PDVSA enjoys as a corporate parent under Delaware law. Others are

mere conclusions, such as Plaintiff's allegations of failure to adhere to corporate formalities or that

Venezuelan officials theoretically claim the power to review PDVH transactions or contracts or to

"interfere" with PDVH management (¶¶ 175, 178), which is unsupported by even a single instance

of that purported power being used. And the rest, such as public, political statements by "Venezue-

lan and PDVSA authorities" (¶¶ 175, 179–80) and PDVH's registration as an agent of its parent

under FARA (¶¶ 93–97, 180), reflects at most "assisting" with the sovereign's "policies and goals"

or standard oversight and involvement to be expected from a foreign sovereign parent corporation.

---

[25] Both SHVSA (in the Note Agreement) and Girard Street (in the Assignment) agreed that New York law would govern. *See* ¶ 26; *see also* CAC Ex. 1 at 38, § 9.07 (Dkt. 47-2). Because New York applies the same alter ego standard as Delaware, *see Mirage Ent., Inc. v. FEG Entretenimien-tos S.A.*, 326 F. Supp. 3d 26, 34 (S.D.N.Y. 2018), the CAC also fails under New York law.

*See Gater,* 2 F.4th at 55–56 ("To qualify as sufficiently extensive under *Bancec*, the sovereign's control over an entity must rise above the level that corporations would normally tolerate from significant shareholders or expect from government regulators.").

Finally, the CAC points to PDVH's alleged pledge of assets in 2016 to secure PDVSA's obligations as proof that PDVSA used PDVH's property as its own. But PDVH's efforts to assist PDVSA (consistent with its fiduciary duties to its parent under Delaware law) in a severe and unprecedented fiscal emergency do not show day-to-day control or support veil-piercing. *See EM Ltd. v. Banco Cent. De La Republica Argentina*, 800 F.3d 78, 94 (2d Cir. 2015) (central bank was not Argentina's alter ego merely because it helped respond to "extremely severe debt crisis").[26]

### Conclusion

Plaintiff is not some doe-eyed innocent bamboozled by irregularities of corporate form. It is a sophisticated debt vulture that seeks to make up for delaying its efforts to pursue PDVSA by asking this Court to be the first ever to pierce PDVH's corporate veil. It pretends to have inherited rather than gambled on the Note that it took with knowledge of more than two decades' worth of public-record facts, and it relies on those same facts to tap PDVH as an involuntary insurer of its failure to demand a domestic guarantor of PDVSA's debt. Far from promoting justice and upholding public policy, permitting an alter ego claim here would disserve both of those values. Now that Girard Street has failed to state any claim against PDVH after two attempts, PDVH respectfully requests that Counts III and IV of the CAC be dismissed with prejudice.

---

[26] To the extent ¶ 176 of the CAC's unexplained reference to "PDVSA uses PDVH's property as its own" refers to dividends received by PDVSA as property of *PDVH*, it is incorrect: as a matter of Delaware law, a declared dividend is the property of the shareholder (PDVSA), not the subsidiary. *See In re Sunstates Corp. S'holder Litig., C.A.*, No. CIV.A. 13284, 2001 WL 432447, at *3 (Del. Ch. Apr. 18, 2001). In any event, the dividends also were paid to meet PDVSA's and Venezuela's fiscal crisis.

Dated: October 16, 2024

Respectfully submitted,

By: /s/ *Nathan P. Eimer*

Nathan P. Eimer (#1976067)
neimer@eimerstahl.com
Scott C. Solberg (*pro hac vice*)
ssolberg@eimerstahl.com
James W. Joseph (*pro hac vice*)
jjoseph@eimerstahl.com
Daniel D. Birk (*pro hac vice*)
dbirk@eimerstahl.com
Gregory M. Schweizer (*pro hac vice*)
gschweizer@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Counsel for Defendant*
*PDV Holding, Inc.*