## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

GIRARD STREET INVESTMENT
HOLDINGS LLC

        Plaintiff,

v.

PDV HOLDING, INC.

        Defendant.

Case No. 24-cv-4448-JSR

(Consolidated for pretrial purposes with Case No. 1:23-cv-10772-JSR and No. 1:23-cv-10766-JSR)

## NONPARTY HUNTINGTON INGALLS INCORPORATED'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## <u>AMENDED MOTION TO INTERVENE</u>

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 2

    I.    Huntington Ingalls' Judgment And The Delaware Sale Proceeding ................................. 2

    II.    Girard Street's Attempt To Circumvent The Delaware Sale Proceeding ....................... 2

    III.    The Deleterious Impact of The Suits Brought By The Alter Ego Plaintiffs .................. 3

        A.    The Sale Process In Delaware Has Been Restarted So That Bids Can Account For The Risks Posed By The Suits Brought By The Alter Ego Plaintiffs ............................... 3

        B.    Girard Street's Abusive Discovery Tactics Effectively Concede The Connection Between This Action And The Delaware Sale Proceeding ................................................... 5

ARGUMENT ................................................................................................................. 5

    I.    Huntington Ingalls Should Be Granted Intervention As Of Right Under Rule 24(a).......... 6

        A.    The Motion Is Timely .......................................................................................... 6

        B.    Huntington Ingalls Has A Protectable Interest That Is Not Adequately Represented By The Parties ............................................................................................... 6

        C.    The Interest Of Huntington Ingalls Would Be Harmed Absent Intervention And Its Requested Transfer ...................................................................................... 7

    II.    Alternatively, Huntington Ingalls Should Be Permitted To Intervene Generally Under Rule 24(b)...................................................................................................... 9

CONCLUSION ............................................................................................................. 10

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Abromats v. Abromats*,
2016 U.S. Dist. LEXIS 31775 (W.D.N.Y. Mar. 11, 2016)........................................................9

*Aequitron Med. v. CBS Inc.*,
93 Civ 950 (SS), 1994 U.S. Dist. LEXIS 942 (S.D.N.Y. Jan. 27, 1994)..................................9

*Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*,
70 F. Supp. 2d 296 (S.D.N.Y. 1999).......................................................................................5

*ConocoPhillips Petrozuata B.V. v. Girard Street Investment Holdings LLC et al.*,
No. 1:24-cv-01140, Dkt. No. 88 (D. Del. Jan. 3, 2025)...........................................................1

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
No. 1:17-mc-151 (D. Del.).................................................................................................2, 4, 6

*Degrafinreid v. Ricks*,
417 F. Supp. 2d 403 (S.D.N.Y. 2006).......................................................................................9

*Floyd v. City of New York*,
770 F.3d 1051 (2d Cir. 2014).....................................................................................................6

*Fox v. Picard (In re Madoff)*,
848 F. Supp. 2d 469 (S.D.N.Y. 2012).......................................................................................8

*G&A Strategic Invs. I LLC v. PDV Holding, Inc.*,
No. 2024-36664, Dkt. No. 1 (129th Dist. Ct., Harris County, Tex. June 10, 2024).................1

*Ginsburg v. Mut. Life Ins. Co.*,
170 F. Supp. 212 (S.D.N.Y. 1958) ...........................................................................................9

*Giuliani, S.p.A. v. Vickers, Inc.*,
997 F. Supp. 501 (S.D.N.Y. 1998) ...........................................................................................8

*Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*,
No. 2024-47814, Dkt. No. 1 (333rd Dist. Ct., Harris County, Tex. July 29, 2024) .................1

*Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*,
No. 4:24-cv-02981 (S.D. Tex. 2024) .........................................................................................1

*In re Atlas Shipping A/S*,
404 B.R. 726 (Bankr. S.D.N.Y. 2009).......................................................................................8

*In re Samsung Elecs Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ....................................................................................................8

*Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*,
  178 F.2d 866 (2d Cir. 1950).........................................................................9

*Morg. Lenders Network, Inc. v. Rosenblum*,
  218 F.R.D. 381 (E.D.N.Y. 2003) .................................................................6

*Olin Corp. v. Lamorak Ins. Co.*,
  325 F.R.D. 85 (S.D.N.Y. 2018) ...................................................................9

*Pezzolanti v. Extensis Grp. LLC*,
  No. 23-CV-7276 (RER)(PK), 2024
  U.S. Dist. LEXIS 192867 (E.D.N.Y. Oct. 23, 2024) ..................................8

*Szulik v. Tag V.I.*,
  858 F. Supp. 2d 532 (E.D.N.C. 2012).........................................................9

*United States CFTC v. Reisinger*,
  2011 U.S. Dist. LEXIS 122942 (D. Neb. Oct. 24, 2011) ............................9

*United States v. Hooker Chems. & Plastics Corp.*,
  749 F.2d 968 (2d Cir. 1984).........................................................................6

*United States v. Pitney Bowes, Inc.*,
  25 F.3d 66 (2d Cir. 1994).........................................................................6, 9

*United States v. Yonkers Bd. of Educ.*,
  801 F.2d 593 (2d Cir. 1986).........................................................................6

**RULES**

Federal Rule of Civil Procedure 24 ...........................................................6, 9

Federal Rule of Civil Procedure 45 ...............................................................5

**STATUTES**

28 U.S.C. § 1404................................................................................5, 8

**INTRODUCTION**

Nonparty Huntington Ingalls Incorporated ("Huntington Ingalls")[1] is a judgment creditor of the Bolivarian Republic of Venezuela ("Venezuela") and Petróleos de Venezuela, S.A. ("PDVSA"). As this Court is aware, following a series of attachments of PDVSA's shares in PDV Holding, Inc. ("PDVH"), an auction has been established in Delaware to enable Huntington Ingalls and various other similarly-situated judgment creditors of Venezuela and PDVSA to recover some portion of the damages awarded them against Venezuela and PDVSA ("Delaware Sale Proceeding"). Plaintiff Girard Street and other affiliates owned by Gramercy (the "Alter Ego Plaintiffs") attempted to participate in the auction as judgment creditors but did not complete the steps required for participation in the auction within the time required by the Delaware District Court, leaving them unable to recover from the proceeds of the auction. In response to this result in the Delaware District Court, Girard Street filed the instant action.

On December 9, 2024, Huntington Ingalls filed a Motion to Intervene in this action, arguing that it should be permitted to intervene for the limited purpose of requesting a transfer of this action to the District of Delaware—the forum where two relevant proceedings were pending before Judge Leonard P. Stark: the Delaware Sale Proceeding that has led to the auction, and a declaratory judgment action commenced by ConocoPhillips against Girard Street and the other parties in the instant action. *See ConocoPhillips Petrozuata B.V. v. Girard Street Investment Holdings LLC et al.*, No. 1:24-cv-01140, Dkt. No. 88 (D. Del. Jan. 3, 2025). In the Delaware Sale Proceeding, bidding has effectively restarted following the failure of the originally recommended bid, a failure that occurred in large part due to bidder concerns relating to the actions brought by the Alter Ego Plaintiffs in this District and in Texas.[2]

After the Motion to Intervene was fully briefed, ConocoPhillips voluntarily dismissed the declaratory judgment action without prejudice. No. 1:24-cv-01140, Dkt. No. 78. With the leave

---

[1] Northrop Grumman Ship Systems, Inc. is the entity that originally obtained an award against the Bolivarian Republic of Venezuela. Northrop Grumman Ship Systems, Inc., by merger, is now Huntington Ingalls Incorporated.

[2] This action is one of three proceedings filed by the Alter Ego Plaintiffs. G&A Strategic Investments ("G&A") filed an action against PDVH in state court in Harris County, Texas seeking similar relief to that sought by Girard Street here. *See G&A Strategic Invs. I LLC v. PDV Holding, Inc.*, No. 2024-36664, Dkt. No. 1 (129th Dist. Ct., Harris County, Tex. June 10, 2024). That action was removed to the U.S. District Court for the Southern District of Texas (No. 4:24-cv-02774 (S.D. Tex. 2024)), where it was stayed pending resolution of G&A's suit against PDVSA before this Court (No. 23-cv-10766-JSR (S.D.N.Y.)). G&A recently filed a motion requesting the Texas court to lift the stay and transfer the action to this Court, which is pending the Texas court's decision. No. 4:24-cv-02774, Dkt. No. 58. Gramercy Distressed Opportunity Fund LLC ("Gramercy") filed a near-identical alter ego action against PDVH in Harris County, Texas. *See Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, No. 2024-47814, Dkt. No. 1 (333rd Dist. Ct., Harris County, Tex. July 29, 2024). That action, too, was removed to the Southern District of Texas, where the parties are currently briefing PDVH's Motion to Dismiss. *See Gramercy Distressed Opportunity Fund, LLC v. PDV Holding, Inc.*, No. 4:24-cv-02981 (S.D. Tex. 2024).

of this Court, Huntington Ingalls submits this Amended Motion to Intervene to set out why transfer of this action to the District of Delaware remains warranted under the transfer statute to prevent the Alter Ego Plaintiffs from benefiting from their attempt to ask this Court to grant it extraordinary equitable relief while simultaneously avoiding the forum best suited to appreciate of all the equities mandating the failure of their request, which is also the forum where they failed to preserve their own rights as judgment creditors. In the alternative, Huntington Ingalls should be permitted to generally intervene to allow it to present this Court with the totality of the equitable considerations warranting the rejection of the requests made by the Alter Ego Plaintiffs—and, if necessary, to request that any equitable relief granted to the Alter Ego Plaintiffs is consistent with their overall status in the priority stack long established in Delaware.

## STATEMENT OF FACTS

### I.  Huntington Ingalls' Judgment And The Delaware Sale Proceeding

Huntington Ingalls is a judgment creditor of Venezuela, holding a judgment amounting to $137,977,646.43 (plus interest) against Venezuela as well as a perfected writ of attachment *fieri facias* on the shares of PDVH owned by Venezuela's state oil company, PDVSA. *See Northrop Grumman Ship Systems, Inc.'s Judgment Statement, Crystallex Int'l Corp*, No. 1:17-mc-151, Dkt. No. 661; Writ of Fieri Facias, *Crystallex Int'l Corp.*, No. 1:17-mc-151, Dkt. No. 1050-1. For over eight years, since 2017, the District Court in Delaware has presided over litigation brought by nearly two dozen judgment creditors like Huntington Ingalls seeking to execute judgments against Venezuela or PDVSA by attaching PDVSA's shares in PDVH. *See generally Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 1:17-mc-151 (D. Del.). For creditors of Venezuela, this required first proving that PDVSA was the alter ego of Venezuela, rendering PDVSA liable for Venezuela's debts. That alter ego relationship has been established twice—first by Crystallex International Corporation in 2018, and then by Huntington Ingalls (together with judgment creditor OI European Group B.V.) in hearings conducted in 2021 and decided in 2023. Each of these determinations has been affirmed by the Third Circuit. Following these alter ego determinations, the Delaware District Court has overseen a complex process for the sale of the PDVH shares that has been ongoing for over two years, and in which Girard Street and the other Alter Ego Plaintiffs have actively participated.[3]  PDVH is a Delaware corporation, and its shares are presently in *custodia legis* with the Delaware District Court. *See Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1515, at 7 ("It is undisputed that this Court [the Delaware District Court] has possession and control over the PDVH Shares.").

### II.  Girard Street's Attempt To Circumvent The Delaware Sale Proceeding

Girard Street's commencement of the instant action followed its unsuccessful participation in the Delaware Sale Proceeding. On March 8, 2024, upon obtaining a default judgment against PDVSA in this Court (which has since been vacated), Girard Street filed a submission with the Delaware District Court stating that it had completed two of the seven steps set forth by that Court for creditors to be eligible to receive proceeds from the sale of the PDVH shares. *Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1038. However, Girard Street did not complete any of the

---

[3] Judge Stark has continued to preside over the proceedings despite his confirmation as a Circuit Judge on the U.S. Court of Appeals for the Federal Circuit in 2022.

remaining required steps and therefore does not stand to recover any sums in the Delaware Sale Proceeding. Girard Street then filed its Complaint in the instant action on June 10, 2024. Girard Street's request for relief in this action—that PDVH be treated as an alter ego of PDVSA and that this Court issue a turnover order entitling Girard Street to possession of PDVH's shares of its subsidiary, CITGO Holding—would circumvent the creditor priority order issued by the Delaware District Court by allowing Girard Street to seize the sole source of value of the shares scheduled to be auctioned by the Delaware District Court.[4]

### III.    The Deleterious Impact of The Suits Brought By The Alter Ego Plaintiffs

On October 23, 2024, this Court denied a motion to intervene by another judgment creditor of Venezuela, Red Tree, based on the reasoning that Girard Street's alter ego action against PDVH "will not interfere" with the Delaware sale process and that a judgment in Girard Street's favor would not impair Red Tree's interest given the terms of a then-pending bid for the purchase of the PDVH shares, which the Court characterized as having a value of $7.3 billion. Dkt. No. 58, at 4-5. Huntington Ingalls respectfully submits that certain material clarifications are necessary in this regard. Further, there have been substantial developments following the briefing on Red Tree's motion to intervene that fundamentally alter the premises of this Court's decision.

### A.    The Sale Process In Delaware Has Been Restarted So That Bids Can Account For The Risks Posed By The Suits Brought By The Alter Ego Plaintiffs

The mere pendency of the actions brought by the Alter Ego Plaintiffs was detrimental to the sale process. PDVH's sole asset is its share of CITGO Holding. Thus, the actions brought by the Alter Ego Plaintiffs have the potential to negate the value of the *res* in the Delaware District Court's custody. As a result, bidding has been restarted, and a full year of auction work effectively discarded, so that new bids can properly account for the actions brought by the Alter Ego Plaintiffs.

Evidence of the fact that the actions brought by the Alter Ego Plaintiffs have harmed the sale process is abundant. For his part, the Special Master indicated that he "is not aware of any third party (*i.e.*, not a holder of an Attached Judgment) willing to submit a bid for the PDVH shares without material conditionality related to pending alter ego cases." *Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1445, at 4. Similarly, the proposed buyer recommended by the Special Master, Amber Energy, maintained that its bid was "expressly conditioned on the granting of the Injunction Motion and the attendant adjudication by [the Delaware] Court of the Alter-Ego Claims." *Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1444, at 5. Amber Energy specifically cited Girard Street's present action before this Court as an example of the "broad litigation overhang" that "significantly increases the risk profile of this investment" for the buyer. *Id.* at 7. That bid was rendered moot in light of the Delaware District Court's denial of the Special Master's motion

---

[4] Girard Street's commencement of the present action also followed an unsuccessful attempt by its parent, Gramercy, to modify the priority rules set by the Delaware District Court. *See Crystallex Int'l Corp.,* No. 17-mc-151, Dkt. No. 893; *Id.*, Dkt. No. 963, at 6-7 (Court denying Gramercy's motion and noting that Gramercy "could have attained higher priority had [it] acted more quickly to enforce [its] judgment[].").

to enjoin the suits brought by the Alter Ego Plaintiffs.  *See* No. 17-mc-151, Dkt. No. 1493; *see also id.*, Dkt. No. 1515 (subsequent memorandum opinion regarding decision).

As a result, the originally proposed Amber Energy transaction that this Court considered in relation to Red Tree's motion to intervene no longer exists, *see Crystallex Int'l Corp.*, Dkt. No. 1455, at 7 n.4,[5] and bidding in the Delaware Sale Proceeding has been scheduled to restart.  After extensive briefing and a full-day hearing on December 13, 2024, the Delaware District Court issued an order on December 31, outlining a comprehensive schedule of steps leading to the sale of the PDVH shares that include additional marketing, reopening of the data room for prospective bidders, and the solicitation of new bids due in March.  *See id.*, Dkt. No. 1517.

While potential future bidders, such as Amber Energy, state that they remain interested in the auction, the present action and other suits brought by the Alter Ego Plaintiffs will materially depress the value of bids.  In the December 13, 2024 hearing, Amber Energy made this explicit, describing the suits brought by the Alter Ego Plaintiffs as follows:

> "[I]t is a very real issue of what happens if the day before the closing those judgments [in the alter ego actions] don't turn out the way [PDVH] or [Crystallex] believes that they would turn out?  That's a real issue, Your Honor.  And going back to the car analogy, it would be like showing up to pick up your car at the dealer and someone telling you a court just ordered that the engine belongs to someone else.  Or not just the engine, the wheels, the steering wheel, the axle, everything is lined off the paper of someone else. … I think that's a real issue."

*See* Ex. A, Dec. 13 Hearing Transcript at 121-22.

In its December 30 memorandum opinion, the Delaware District Court explained the reasons for its denial of the Special Master's motion to enjoin the suits brought by the Alter Ego Plaintiffs, the "dispositive" reason being the absence of an applicable legal doctrine justifying the requested injunction.  *Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1515, at 7.  Nonetheless, the Delaware District Court's observations about the expected impact of the suits brought by the Alter Ego Plaintiffs on the outcome of the sale process are instructive:

- The Court "anticipates that the pendency of the Alter Ego Actions could exert downward pressure on the value of the PDVH Shares." *Id.* at 10.  The Court acknowledged the Special Master's concern that the suits brought by the Alter Ego Plaintiffs "will certainly adversely affect the value the [sale] process is able to provide to creditors," which the Court

---

[5] Even if the now-defunct Amber Energy transaction had been consummated, the $7.3 billion figure referenced in this Court's prior ruling on Red Tree's motion did not represent the amount of proceeds that actually would have been distributed to eligible creditors.  The top-line figure "reflect[ed] both the equity and debt of CITGO" and was "therefore not the correct figure for evaluating which Additional Judgment Creditors will share in the waterfall of sale proceeds," and was subject to several substantial downward adjustments—including reservations or reductions based on the actions brought by the Alter Ego Plaintiffs—creating "a strong likelihood that the purchase price [would] be lower than this headline number after adjustments, potentially by billions of dollars." *Crystallex Int'l Corp.*, No. 17-mc-151, Dkt. No. 1415, at 3.

considered to be "likely true." *Id.* at 18. The Court recognized this reality but held that it did not require an injunction, because the Delaware Sale Process was intended to allow judgment creditors to execute on whatever the value of the property in the district is, even if "such property … has little value or even negative value." *Id.*

- The Court found that the present circumstances "do not come within the narrow scope in which the Court may properly exercise its All Writs [Act] authority," particularly because "[a]ny party wishing to oppose the Alter Ego Actions may move to intervene in those actions, which could provide each of them an adequate remedy at law as well." *Id.* at 11.

- The Court noted the procedural posture of suits brought by the Alter Ego Plaintiffs, which led the Court to consider the continued litigation of those actions to be more efficient than adjudicating the issue of PDVH's alter ego status in ConocoPhillips' declaratory judgment action. *Id.* at 20-21. The Court did not express any view as to the potential transfer of the suits brought by the Alter Ego Plaintiffs to the District of Delaware, which would preserve their current procedural posture (including all pending motions).

B. <u>Girard Street's Abusive Discovery Tactics Effectively Concede The Connection Between This Action And The Delaware Sale Proceeding</u>

Girard Street brought Huntington Ingalls into this action by issuing an improper third-party subpoena, perhaps in an effort to avoid resolution of its case on a motion to dismiss. As this Court is aware, Girard Street has blanketed numerous creditors in the Delaware Sale Proceeding with such subpoenas, in which Girard Street seeks to appropriate the attorney work product from Huntington Ingalls' and other creditors' investigation and litigation of *PDVSA's* (not PDVH's) alter ego relationship with Venezuela in the context of the Delaware Sale Proceeding.[6] Girard Street's subpoenas to these nonparties comprise requests that are altogether irrelevant to this case and overbroad in any event. *See* Dkt. No. 66, at 2 (quashing Girard Street's subpoenas to CITGO entities).

## ARGUMENT

This Court should allow Huntington Ingalls to intervene in this case for the limited purpose of bringing a motion under 28 U.S.C. § 1404 seeking the transfer of this action to the District of Delaware.[7] Alternatively, the Court should allow Huntington Ingalls to intervene generally in the instant action, which affects Huntington Ingalls' protectable interests. In either case, Huntington

---

[6] The Rule 45 subpoenas that Girard Street issued to Huntington Ingalls is identical to the subpoena it issued to Crystallex, which was submitted on the record with CITGO's Motion to Quash. Dkt. No. 63, Ex. 7. Huntington Ingalls filed timely objections to the Girard Street subpoena and reserves the right to file motions to quash Girard Street's subpoenas.

[7] The sequencing of these motions, whereby Huntington Ingalls seeks this Court's leave to intervene so that it will have standing to move for (and thus fully brief) a transfer of this action to the District of Delaware, is appropriate in the ordinary course. *See Am. Home Assurance Co. v. RJR Nabisco Holdings Corp.*, 70 F. Supp. 2d 296, 299-300 (S.D.N.Y. 1999) (non-party lacked standing to seek a transfer from this Court because it had "neither formally intervened nor otherwise been joined" in the action).

Ingalls satisfies the standard for either intervention as of right under Federal Rule of Civil Procedure 24(a) or permissive intervention under Rule 24(b).

## I.     <u>Huntington Ingalls Should Be Granted Intervention As Of Right Under Rule 24(a)</u>

A party may intervene as of right, under Rule 24(a)(2), if it: "(1) files a timely motion; (2) asserts an interest relating to the property or transaction that is the subject of the action; (3) is so situated that without intervention the disposition of the action may, as a practical matter, impair or impede its ability to protect its interests; and (4) has an interest not adequately represented by the other parties." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994). In applying this test, courts are mindful that Rule 24 "provides the flexibility necessary to cover the multitude of possible intervention situations and that common sense demands that consideration be given to matters that shape a particular action or a particular type of action." *United States v. Hooker Chems. & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984) (quotations and ellipses omitted).

### A.     <u>The Motion Is Timely</u>

The timeliness inquiry entails a flexible assessment of the totality of the circumstances in the district court's sound discretion and is not confined to the length of time a litigation has been pending. *See Floyd v. City of New York*, 770 F.3d 1051, 1058 (2d Cir. 2014); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593, 595 (2d Cir. 1986); *Morg. Lenders Network, Inc. v. Rosenblum*, 218 F.R.D. 381 (E.D.N.Y. 2003). Here, it was in October 2024 that ConocoPhillips commenced its declaratory judgment action against Girard Street in the District of Delaware and, later, this Court denied Red Tree's motion to intervene in the present action. And it was on November 20, 2024 that the Delaware District Court indicated that it was not inclined "to undertake to resolve, in the context of the *Crystallex* auction, the fact issue of whether PDVH is the alter ego of the Republic and/or PDVSA, or the related issue of whether PDVH is subject to reverse veil-piercing." *Crystallex Int'l Corp.,* No. 17-mc-151, Dkt. No. 1433, at 6. Accordingly, at the time Huntington Ingalls filed its original Motion before this Court, it had known for only a matter of weeks that its interest in relation to the present action will not be represented (adequately or otherwise) by another similarly-situated judgment creditor. Huntington Ingalls also sought leave to amend its Motion to Intervene the next business day after ConocoPhillips voluntarily dismissed its declaratory judgment action in Delaware. The Motion to Intervene and the present amendment therefore are both timely.

### B.     <u>Huntington Ingalls Has A Protectable Interest That Is Not Adequately Represented By The Parties</u>

The Huntington Ingalls judgment against Venezuela of approximately $137,977,646.43 (plus interest) and its perfected attachment on the PDVH shares constitute a "direct, substantial, and protectable interest" in the property at issue in this action under Rule 24(a)(2). *See* Dkt. No. 58, at 3 (finding that Red Tree's judgments against PDVSA and lien on PDVH's shares represent a cognizable interest). Girard Street's nonparty subpoenas to Huntington Ingalls and other creditors in the Delaware Sale Proceeding prove as much—Girard Street's requests for documents concerning the relationship between PDVSA and Venezuela betray the close connection between the evidence it intends to deploy in this action and the long-running proceedings in the District of Delaware. Further, Huntington Ingalls and other nonparty creditors remain under the specter of

potentially being subjected to further unreasonable discovery requests, such as commands to provide deposition testimony.

The interest of Huntington Ingalls is not adequately represented by the parties in this case for the same reasons this Court articulated in its order on Red Tree's motion. *See* Dkt. No. 58, at 4 ("The burden to demonstrate inadequacy of representation is 'minimal.' To that end, Red Tree and the existing parties do not have the same ultimate objectives. Girard Street is a competing creditor who will prioritize its own recovery, and PDVSA and PDVH, as the debtors, also have no reason to protect Red Tree's recovery.") (internal citation omitted). Moreover, neither Girard Street—which sought to undermine the Delaware District Court's auction once it realized it would not benefit from the auction—nor PDVSA and PDVH—which seek to avoid consummation of a sale altogether—have any incentive of apprising this Court of the full scope of equitable considerations at play in relation to the Delaware Sale Proceeding.

C. The Interest Of Huntington Ingalls Would Be Harmed Absent Intervention And Its Requested Transfer

This Court denied Red Tree's motion based on its consideration that Red Tree's interest would not be impaired absent intervention. Dkt. No. 58, at 4. In particular, the Court reasoned that "there is no evidence that the instant action, even if it were to result in a judgment against PDVSA, would impair Red Tree's ability to recover on its outstanding judgment of $280 million," based on the fact that Red Tree's priority position in the Delaware Sale Proceeding was behind $3.3 billion in claims while the existing offer for the purchase of PDVH shares was $7.3 billion. *Id.*

Huntington Ingalls respectfully submits that the clarifications and recent developments set out above now result in an opposite conclusion under the Court's analysis in this regard. In large part because of the material risks imposed by the suits brought by the Alter Ego Plaintiffs, there is currently no proposed transaction on the table in the Delaware Sale Proceeding, and the marketing and bidding process has effectively restarted. More fundamentally, as explained above (*see supra* p. 4-5), the Delaware District Court has explicitly recognized that the expected effect of the pending alter ego actions will be a reduction in the value of the PDVH Shares. *See Crystallex Int'l Corp.,* No. 17-mc-151, Dkt. No. 1515, at 10, 18. And the Delaware District Court has expressed that intervention in the suits brought by the Alter Ego Plaintiffs could allow judgment creditors to obtain redress. *See Crystallex Int'l Corp.,* No. 17-mc-151, Dkt. No. 1515, at 11, 22.

This real threat of harm to the interests of Huntington Ingalls warrants intervention, whether for the purpose of requesting a transfer of this action to Delaware or to protect its interests before this Court. With respect to a transfer, its merits are manifold. Girard Street acknowledges that its request that PDVH and PDVSA be treated as alter egos is equitable in nature. *See* Dkt. No. 1, ¶¶ 5, 135, 142; Dkt. No. 47, ¶ 223. The totality of the equities, however, are not before this Court. The court with the clearest view of the full range of equitable considerations—not least, the efforts by Girard Street to undermine the auction—is the Delaware District Court. Those who seek equity must themselves do equity. Girard Street's attempt to sidestep the Delaware Sale Proceeding so as to undercut other creditors participating in that proceeding—all while harassing them with discovery that effectively admits the connection between its present action and the issues previously adjudicated in Delaware—displays a lack of clean hands and are also elements

7

of the totality of equities that would need to be considered in determining Girard Street's alter ego claim.[8]  If, as Huntington Ingalls believes, Girard Street's alter ego request lacks merit and was brought in bad faith for the purpose of interfering with the Delaware Sale Proceeding, then the Delaware District Court is best placed to view that fact in context, as equity dictates.  For this reason, Huntington Ingalls must intervene to protect its interests by seeking to transfer this action to a court that has considerably more institutional knowledge concerning the facts and circumstances surrounding Girard Street's claims and is thus better suited to have a fully-informed view of the relevant equities.

For the avoidance of doubt, ConocoPhillips' recent dismissal of its declaratory judgment action without prejudice does not impact this Court's ability to transfer this case to the District of Delaware as a matter of law or discretion.  This Court maintains authority under 28 U.S.C. § 1404 to transfer this matter to the District of Delaware, whether by application or *sua sponte*.  Indeed, 28 U.S.C. § 1404 does not require the existence of a related case in another district as a prerequisite to transfer.  *See, e.g.*, *Pezzolanti v. Extensis Grp. LLC*, No. 23-CV-7276 (RER)(PK), 2024 U.S. Dist. LEXIS 192867, at *13 (E.D.N.Y. Oct. 23, 2024); *Giuliani, S.p.A. v. Vickers, Inc.*, 997 F. Supp. 501, 504 (S.D.N.Y. 1998) (transfer of the action to Nebraska in the interest of justice would be appropriate even if there were no related action already pending in that forum).

Nor does the Delaware District Court's decision to refrain from enjoining these proceedings or hearing the alter ego claims in the context of the Delaware Sale Proceeding itself factor against the requested transfer.  While the Delaware District Court found no legal authority

---

[8] The Alter Ego Plaintiffs' gambit—which seeks to obtain attachments of PDVH's shares of CITGO Holding so as to undermine the value available to the judgment creditors in the Delaware Sale Proceeding who have already obtained attachments of PDVSA's shares of PDVH—is akin to maneuvers by plaintiffs to manipulate venue so as to avoid transfer or by competing creditors to avoid the jurisdiction of a bankruptcy court, all of which courts have steadfastly refused to countenance.  *Cf. In re Samsung Elecs Co.*, 2 F.4th 1371, 1377 (Fed. Cir. 2021) ("[T]he Supreme Court and this court have repeatedly assessed the propriety of venue by disregarding manipulative activities of the parties."); *Fox v. Picard (In re Madoff)*, 848 F. Supp. 2d 469, 480-81 (S.D.N.Y. 2012) (affirming bankruptcy court's determination that tort actions brought in Florida were void for violating automatic stay in New York bankruptcy proceeding, as the claims asserted in the Florida actions could have been brought by any creditor of the debtor, and because "the bankruptcy laws' core purpose would be severely undermined" if "some potential creditors could obtain payment of their claims in preference to and to the detriment of other creditors simply by styling their pleadings as sounding in tort.") (internal quotation and citation omitted); *In re Atlas Shipping A/S*, 404 B.R. 726, 745 n.17 (Bankr. S.D.N.Y. 2009) (rejecting "blatant gamesmanship" of opposing creditors who "hope to circumvent the jurisdiction of the Danish bankruptcy court and this Court, and to recover the entire amount of their claims while other Atlas creditors who file claims in the Danish bankruptcy proceeding may recover substantially less.").  Indeed, bringing legal proceedings in a particular forum so as to obtain an improper advantage over other creditors is widely considered anathema.  *Cf.* Ex. B, Award dated August 29, 2024 in *WM Mining Company, LLC v. Mongolia*, ICSID Case No. ARB/21/8, at ¶ 191 (dismissing arbitration claim for abuse of rights, where the claimant's initiation of the arbitration was found to be an attempt "to gain an illegitimate advantage over the creditors in the liquidation of" a company "in a final push … to secure payment for itself, potentially at the expense of other creditors.").

for it to impose an injunction to bar Girard Street from prosecuting the instant action, it has not been asked to opine on the potential transfer of this action (or those of Girard Street's affiliates). And while the Delaware District Court rightly expressed confidence that other courts could address the alter ego claims and further noted the advanced procedural posture of the actions before this Court and in Texas, those considerations do not change the fact that the Delaware District Court is uniquely positioned to evaluate the equities surrounding the suits brought by the Alter Ego Plaintiffs.  Moreover, the procedural status of the suits brought by Alter Ego Plaintiffs (including decisions on any pending motions) would be maintained upon transfer to Delaware.  *See Magnetic Eng'g & Mfg. Co. v. Dings Mfg. Co.*, 178 F.2d 866, 868 (2d Cir. 1950) ("[W]hen an action is transferred, it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done."); *Aequitron Med. v. CBS Inc.*, 93 Civ 950 (SS), 1994 U.S. Dist. LEXIS 942, at **16 (S.D.N.Y. Jan. 27, 1994) (a rule of law, once decided, "continue[s] to govern the same issues in subsequent stages in the same case.") (citations omitted); *Abromats v. Abromats*, 2016 U.S. Dist. LEXIS 31775, at *17 (W.D.N.Y. Mar. 11, 2016); *Szulik v. Tag V.I.*, 858 F. Supp. 2d 532, 550 (E.D.N.C. 2012); *United States CFTC v. Reisinger*, 2011 U.S. Dist. LEXIS 122942, at *2 n.1 (D. Neb. Oct. 24, 2011) ("When an action is transferred, it remains in the posture it was in and all further proceedings in the action merely are referred to and determined by the transferee tribunal, leaving untouched whatever already has been done in the transferor court.") (citing 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3846 (3d ed. 2007)); *Ginsburg v. Mut. Life Ins. Co.*, 170 F. Supp. 212, 214 (S.D.N.Y. 1958) ("A transfer of the case from one district to another does not vitiate orders made prior to the transfer.").

## II.    Alternatively, Huntington Ingalls Should Be Permitted To Intervene Generally Under Rule 24(b)

Permissive intervention is appropriate if the moving party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B).  This standard is to be "liberally construed."  *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (quoting *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)).  The "principal guide in deciding whether to grant permissive intervention is 'whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *Pitney Bowes*, 25 F.3d at 73 (quoting Fed. R. Civ. P. 24(b)(3)).

Huntington Ingalls' requested intervention seeks either the standing to move to transfer this action to the District of Delaware or the ability to participate in these proceedings as a means to ensure that all relevant facts and equitable considerations are presented to this Court.  Far from unduly delaying adjudication of Girard Street's request for an alter ego finding or prejudicing the parties in the present action, such a transfer or limited intervention would in fact promote judicial efficiency and ensure the continued effectiveness of the Delaware Sale Proceeding.  The Delaware District Court is well versed in the factual relationships between Venezuela, PDVSA, and PDVH as well as the full panoply of equitable considerations and stakeholders impacted by Girard Street's claim.  As Girard Street's instant action invokes a court's equitable powers to deem PDVH an alter ego of PDVSA, the most suitable forum for that issue to be decided is the court with a complete perspective of the equities at play.

Alternatively, and regardless of this Court's views concerning the above-referenced transfer, the intervention of Huntington Ingalls for the purpose of participating in this action is warranted. The Delaware District Court recently recognized the value of other creditors' intervention in the suits brought by the Alter Ego Plaintiffs when it expressed that "Additional Judgment Creditors might also seek to intervene in the Alter Ego Actions and might then be heard by the courts presiding over those cases." *Crystallex Int'l Corp.,* No. 17-mc-151, Dkt. No. 1515, at 22. In line with the Delaware District Court's order, Huntington Ingalls seeks to defend its interests in this action by requesting specific relief, including (but not limited to) enforcing the Delaware District Court's established priority order of judgment creditors. If Girard Street were to establish the elements for reverse veil-piercing to hold PDVH to be the alter ego of PDVSA and liable for its debts, that finding should not be used to prejudice Huntington Ingalls and the other Additional Judgment Creditors that have participated in good faith in the Delaware Sale Proceeding. In that event, this Court should order any available relief in accordance with the priority order established by the Delaware District Court. That would be the equitable solution to avoid prejudice to Huntington Ingalls and other Additional Judgment Creditors who participated in the Delaware Sale Proceeding on the basis that PDVH was a distinct entity and not the alter ego of PDVSA, and would reduce the harm that reverse veil-piercing would otherwise cause.

The intervention of Huntington Ingalls would also provide the benefit of informing this Court with the full picture of the Delaware Sale Proceeding and related developments, including indications of the impact of Girard Street's and its affiliates' alter ego actions on bidding and the value of a potential sale, which Girard Street seeks to obfuscate.

## **CONCLUSION**

For the foregoing reasons, the Court should allow Huntington Ingalls to intervene in this action and order briefing on a motion to transfer this action to the District of Delaware. In the alternative, the Court should allow Huntington Ingalls to intervene generally in this action.

Dated: January 10, 2025

_____
Alexander A. Yanos
ALSTON & BIRD, LLP
90 Park Avenue, 15th Floor
New York, NY 10016-1387
(Tel) 212-210-9400
(Fax) 212-210-9444
alex.yanos@alston.com

*Counsel for Huntington Ingalls Incorporated*